The State of Ohio, Appellee, *v.* Ward, Appellant. ▮

[Cite as State v. Ward (1974), 44 Ohio App. 2d 85.]

(No. 526—Decided May 24, 1974.)

*Mr. Roger R. Ingraham,* prosecuting attorney, and *Mr. Kenneth L. McArtor,* for appellee.
*Mr. James R. McIlvaine,* for appellant.

Victor, J. The defendant (appellant), Alfred L. Ward, was convicted, by a jury, of armed robbery (R. C. 2901.13). A judgment was entered on the verdict and he was sentenced to the Ohio State Penitentiary. His motion for a new trial was overruled. From that judgment, he has timely filed an appeal, and asserts three grounds of error. They are:

"1. The court should have granted the defendant's motion to suppress evidence, that consisted of certain weapons, removed from a vehicle driven by defendant-appellant pursuant to a search warrant on the grounds that the search warrant was not executed in a manner conforming to the laws of the state of Ohio.

"2. The identification procedures used in the instant case were so grossly suggestive and conducive to irreparable mistaken identification that due process of law is totally lacking.

"3. Appellant should have been advised of his consti-

tutional right to counsel prior to exposing him to a one man confrontation identification as the police work had entered the 'critical stage' and the failure to do so resulted in a violation of appellant's Sixth Amendment right to counsel."

Ward was the driver of an automobile in which Golden was a passenger. This vehicle was stopped at 5:48 a. m. on November 4, 1972, by Larry Viers, a state highway patrolman, on Route 18 at the intersection of Interstate 71, for being driven without lights, and for proceeding in an easterly direction on the westbound lane of Route 18, a divided highway.

This arrest took place within a few hundred feet of a Humble service station, where just a few minutes before the attendant had been robbed by two masked and armed men. One of the robbers was naked to the waist and carried a sawed-off shotgun, the grip of which was wrapped with black tape. Later, a sawed-off shotgun, the grip of which was wrapped with black tape, was found in the car.

The patrolman knew nothing of the robbery. He told Ward, who at that time was stripped to the waist, that he was being arrested for a traffic violation, and ordered Ward to follow him to the Medina police station. On the way to the station, another patrolman, Bernard Lodrick, joined the procession and followed the car driven by Ward to the police station. Shortly thereafter, Albert Corp, a deputy sheriff of Medina County, who was cruising in the area, received notification over the air of the armed robbery.

Corp went to the service station, secured information relating to the robbery from the attendant, Kenneth Mc-Colour, and then took McColour to the Medina police station. While enroute, he was informed that the suspects were in custody. McColour, in one-on-one confrontations, identified Ward and Golden as the men who had robbed him, and Ward (the shirtless one), as the individual with the sawed-off shotgun. Ward and Golden, together with a third subject (a woman), were then taken to the Sheriff's department and booked for armed robbery. Thereafter, they were secretly indicted for the crime.

The interior of the automobile driven by Ward had been examined by Lodrick at the police station, by flashlight, without entering the car. At trial, Lodrick testified:

"Q. [Mr. Ingraham] * * * did you do anything in regard to the automobile in question?

"A. Yes, sir, I walked over, and I shined my flashlight in the windows of the vehicle and looked in.

"Q. What did you observe, if anything?

"A. I observed weapons. First thing that caught my eye, I saw a cartridge case, a bullet, and I leaned over and looked closer, at which time I could see a revolver laying on the floor in the front seat. There was a rifle laying along the side of the seat with the muzzle projecting out from underneath the corner of the seat, and on the floor in the back seat was a sawed-off shotgun."

This information was given to the officers inside, but the car was not searched at that time, nor the weapons confiscated. An entrance of the car at the time, and a search thereof, would have been proper as an incident to a lawful arrest. Furthermore, the possession of the sawed-off shotgun was a violation of law and, therefore, contraband (R. C. 2923.04) which would have warranted its seizure.

The car was impounded by the police officers and securely locked in a garage until a search warrant was obtained a day or two later. At that time, the warrant was executed, a search was made, and the weapons previously mentioned were seized. All of the weapons were admitted in evidence and it is this admission that is questioned. Ward maintains that the warrant was not executed in conformance with R. C. 2933.241, in that the inventory of property seized must be made "in the presence of at least one credible person other than the applicant for the warrant." It is admitted that this was not done.

It is questionable whether Ward even has standing to question the defective execution of the warrant. There is evidence in the record that indicates the car which he was driving was stolen; hence, it was not Ward's property that was being searched. However, this issue was not raised by the briefs and we shall not discuss it further. Ward does not contest the validity of the issuance of the warrant.

He contests only the manner in which it was executed. Rule 41(d) of the Federal Rules of Criminal Procedure is similar to R. C. 2933.241. In construing that rule, it has been held that the failure of officers executing a validly issued search warrant to comply with Rule 41(d) absolutely does not affect the validity of the search, where it is otherwise reasonable. *United States* v. *Hooper* (E. D. Tenn., 1969), 320 F. Supp. 507, affirmed 438 F. 2d 968, cert. denied 400 U. S. 929. See, also: *State* v. *Cortman* (Ore., 1968), 446 P. 2d 681, cert. denied 394 U. S. 951, wherein it is said, at page 683:

"Since the search was conducted under a warrant valid on its face, and since we have held that the search itself was reasonable, a good search was not made bad by the failure of the officers thereafter to make a prompt inventory and return * * *. While the requirement of a prompt return is * * * a valuable safeguard of the property rights of individuals, these rights can be protected without resort to the automatic invocation of the exclusionary rule. The privacy of the individual, which it protected by the Fourth Amendment, has already been invaded by the time the inventory-and-return statute becomes relevant. The exclusion of trustworthy evidence that has lawfully come into the possession of the government would penalize society without serving a constitutional purpose."

The first assignment of error is rejected.

We have reviewed the record and conclude that the one-on-one confrontation at the police station, whereby McColour identified Ward, was not so impermissibly suggestive as to require its rejection at trial. See *Kirby* v. *Illinois* (1972), 406 U. S. 682. We reject the second assignment of error.

The failure to provide counsel at such a confrontation is not a violation of due process. *Kerby* v. *Illinois, supra.* Assignment of error number three is rejected.

We find no prejudicial error and, therefore, we affirm the judgment.

*Judgment affirmed.*

Mahoney and Doyle, JJ., concur.