The State of Ohio, Appellee, *v.* Jones, Appellant.

(No. C-75639—Decided August 16, 1976.)

*Mr. Simon L. Leis, Jr., Mr. Robert R. Hastings, Jr.,* and *Mr. John Valentine,* for appellee.

*Mr. Thomas A. Schaffer,* for appellant.

*Per Curiam.* This cause came to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; the transcript of the proceedings; the assignments of error; and the briefs and arguments of counsel.

The defendant, the appellant herein, was indicted for aggravated robbery and, following a trial by jury on his plea of not guilty, was convicted and sentenced as appears of record. An appeal was timely filed, with six assignments of error presented for review.

The record reveals that on May 12, 1975, while one Aaron Mizell was working in his grocery store on Beekman Avenue in Cincinnati, a young black man, subsequently identified as the defendant, entered the store at about 11:30

a. m., looked into the soda pop container, and departed while Mizell waited on two customers. After these customers left, the defendant re-entered, produced a .38 caliber revolver and announced a holdup. Money was taken from the cash box and Mizell, who was made to lie on the floor, was forced to give up his wallet. The defendant then fled. Police were called and the vicinity of the holdup searched, but no suspects were found. Mizell, a former police officer himself, furnished the police with a detailed description of the individual, who had not been masked and whom Mizell was able to closely observe during the 7 to 10 minutes that transpired during the robbery.

Several days after this incident, Mizell looked through some 2,500 to 3,000 photographs in an attempt to identify the robber, but was certain that the individual's photograph was not among those displayed to him. Then, on June 5, 1975, Mizell received an anonymous telephone call informing him that the defendant was the individual who robbed him. Mizell relayed this information to the police who identified the individual named by the anonymous caller as a juvenile resident within the immediate neighborhood of the grocery store, and attempted to obtain a photograph of him. None being found at defendant's schools or on file in police records, the police then called at his home and explained to defendant's mother that they had received an anonymous call implicating her son in an armed robbery. The mother summoned defendant downstairs and consented to the taking of a polaroid photograph of her son, when the officers knew he was a minor. Leaving defendant's home, the officers telephoned Mizell and told him they had a photograph for him to took at. Meeting Mizell at his residence, they handed him the photograph, which Mizell promptly identified as that of the armed robber. This identification occurred on June 15, ten days after Mizell had informed the police of the anonymous tip. The officers denied telling Mizell prior to his identification that the polaroid snapshot was of the individual named by the informant, but asserted that Mizell's identification was immediate, positive and unprompted.

The defendant was then taken to the police station and informed of his *Miranda* rights. He denied any involvement in the robbery and insisted on a face-to-face confrontation with his accuser, Mizell. Mizell was accordingly called, visited the station and, upon entering the room where defendant was sitting with two officers, stated: "You don't even have to get up. You know you are the man, and I know that you are the man, why don't you tell them about it."

Defendant's first assignment of error states as follows:

"The trial court erred in refusing to suppress and subsequently admitting the photograph which was taken of defendant, a juvenile, without the consent of the Juvenile Court, in violation of Revised Code Section 2151.313."

R. C. 2151.313 reads as follows:

"No child shall be fingerprinted or photographed in the investigation of a crime without the consent of the judge, except as provided in this section. Fingerprints of a child may be taken by law enforcement officers investigating the commission of an act which would be a felony if committed by an adult when there is probable cause to believe that the child may have been involved in the felonious act being investigated.

"Unless otherwise ordered by the court, originals and all copies of such fingerprints or photographs shall be delivered to the juvenile court after use for their original purpose for such further use and disposition as the court directs.

"Fingerprints and photographs of a child shall be removed from the file and destroyed if a complaint is not filed or is dismissed after having been filed."

The state argues the propriety of the procedure followed here on three grounds: that the section refers to "mugshots" and is inapplicable to the informal procedure followed here; that a photograph, like fingerprints, is permissible when the police are investigating a felony; and, finally, that the mother of the juvenile waived his rights by consenting to the photograph. We find none of these arguments persuasive or permissible under the clear language of the statute. It may well be that there is no discernible

reason for distinguishing between a photograph and a fingerprint when the police are investigating a juvenile's possible connection with a felony, but the General Assembly has made such a distinction and we can find no sufficient basis for ignoring it which would not involve us in judicial legislation. As to the effectiveness of the mother's consent, we have no reason to believe that it was any more effective to waive a substantive right of the defendant than would have been the mother's waiver of defendant's right, for example, to counsel in post-indictment adversary proceedings.

We conclude that the trial court erred in failing to suppress the photograph and in admitting it into evidence, and therefore find defendant's first assignment of error to be well taken. This conclusion does not, however, mandate a reversal of the judgment below unless the error may be said to have prejudiced the defendant. This decision, in turn, may best be examined and decided in connection with our discussion of the balance of defendant's assignments of error, which raise other questions in connection with the identification process, and require our attention to focus on the totality of the circumstances surrounding the identification of the defendant as the perpetrator of the armed robbery.

Thus, the second assignment of error asserts error under *Silverthorne Lumber Co., Inc.,* v. *United States,* (1920), 251 U. S. 385, and *Wong Sun* v. *United States* (1963), 371 U. S. 471, predicated upon the failure to suppress Mizell's identification of the defendant as evidence, where such identification was founded upon the illegally obtained photograph. The identification, argues defendant, was tainted as being the "fruit of the poisonous tree," (*Wong Sun, supra* at 488) and should have been rejected as evidence. First, we note that we have previously rejected a similar "but for" argument where an identification arose initially from an illegal entry and arrest and an arguably improper lineup, but where the totality of circumstances manifested an effective identification apart from and independent of the tainted procedure.

*State.* v. *Robinson,* First Appellate District No. C-74285, decided August 4, 1975. In the instant cause, we conclude that defendant's argument seeks to define the issue too narrowly, and that the more appropriate test is whether the record, viewed in the totality of the circumstances revealed therein, demonstrates that the procedure followed with respect to the photograph "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States* (1968), 390 U. S. 377, at 384.

Here, unlike most photographic identification cases, the record reveals that the photograph was not the primary method of identification. The defendant's identity had already been suggested by the anonymous telephone call and he was located by the police. The use of the photo was no more than a convenient short cut, so as to avoid the necessity of a pre-arrest confrontation between Mizell and the defendant. Indeed, when that confrontation was subsequently effected pursuant to defendant's demand, the identification of defendant was immediate, exact and convincing. Moreover, and of perhaps greater significance, a review of the record convinces us that the in-court identification of defendant, which was positive and unequivocal, was, in addition, eminently credible. We are led to this conclusion by a variety of evidentiary considerations, including the well-illuminated interior of the premises, the length of time Mizell had to observe the features of the accused, the positiveness with which Mizell rejected 2,500 to 3,000 police photographs before he found his man (which seems to negative any inference of undue suggestibility), the similarity of the description given the police after the robbery with the physical characteristics of the accused, the proximity of defendant's residence to the scene of the robbery, and the positive character of Mizell's identification, both during the initial confrontation at the police station and in court, the latter remaining unshaken despite vigorous and skillfull cross-examination.

The foregoing considerations, which lead us to overrule the second assignment of error, requires a similar re-

sult with regard to the third assignment of error, that maintains there was an irregularity in the photographic identification process which presented Mizell with only one photograph rather than a series. Where, as here, we find no substantial likelihood of irreparable misidentification, we are under no compulsion to hold that reversible error, resulting from arguable irregularities in the pretrial identification by photograph procedures, followed. *Simmons* v. *United States, supra.*

Defendant's fourth and fifth assignments of error proceed from the nature of the face-to-face confrontation between Mizell and the defendant at the police station, defendant arguing that his Sixth and Fourteenth Amendment rights were violated where there was no counsel afforded the defendant, and where the confrontation was, it is argued, "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall* v. *Denno* (1967), 388 U. S. 293, at 302. While such a face-to-face confrontation is clearly not in keeping with the best of police technique, it is equally clear that the defendant himself demanded the confrontation, insisting to the officers that it would prove his innocence. There is nothing in the record to suggest that the confrontation format was designed by the officers, or that they were doing anything other than acceding to the demand of the accused. Moreover, with respect to the due process argument, as well as the Sixth Amendment argument, directed to the absence of counsel, we conclude that the nature of the other evidence regarding the independent nature of the identification, and the absence of the likelihood of misidentification (which we have reviewed at some length *supra*) brings this case within the rule of *State* v. *Hurt* (1972), 30 Ohio St. 2d 86, and requires us to overrule both the fourth and fifth assignments of error.

Finally, defendant argues that the trial court erred in declining to instruct the jury on the issue of identification, as requested by defendant in written instructions model upon those found in *United States* v. *Telfaire* (D. C. Cir. 1972), 469 F. 2d 552, at 558. The record reveals that the court gave part of these requested instructions but declin-

ed to give two paragraphs thereof. The first of these dealt with the issue of the state's burden of proof, which had already been covered generally and adequately; the second concerned itself with the greater likelihood of accuracy resulting from an identification from a line-up of more than one individual. We conclude from a reading of the charge in its entirety that the greater part of the requested instructions was either given or otherwise subsumed in the charge, and that the refusal to give the balance of the requested instruction did not rise to the level of prejudicial error. The sixth assignment of error is overruled.

In summary, and for the reasons we have stated at some length herein, we conclude that the error of the trial court in admitting the photograph into evidence was harmless, and that the record taken as a whole compels our conclusion that there was present in this trial no substantial likelihood of irreparable misidentification arising from the improper introduction of this evidence.

*Judgment affirmed.*

SHANNON, P. J., PALMER and KEEFE, JJ., concur.