THE STATE OF OHIO, APPELLEE, *v.* CALDWELL, APPELLANT.

(No. 45112 — Decided September 27, 1984.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Daisy G. Collins,* for appellant.

JACKSON, J. Appellant, Harold Caldwell, was indicted on two counts of rape, one count of kidnapping, and two

counts of aggravated robbery, because of his alleged participation in events which occurred the night of May 19-20, 1980.

The victims of these crimes were Octavia Walker and Gordon Mattox. Walker testified that her car stalled at about midnight near the intersection of 131st Street and Miles Avenue. A man named "Slim" initially stopped to assist her, and left to obtain jumper cables. A second man by the name of Gordon Mattox then stopped his car, and offered to assist her. While Mattox was standing in front of the car, and as Walker was bending down in the front seat to release the hood latch, two men approached Mattox. When Walker sat up, she saw the appellant and another "heavy-set" man robbing Mattox at gunpoint. His wallet containing $20 and his car keys were stolen. The two robbers were facing Walker throughout the robbery, which lasted two to three minutes. The area where the incident occurred is described as a brightly-lit commercial district.

Following the robbery of Mattox, the heavy-set man with the gun entered Walker's car, while appellant walked over to the car operated by Mattox. Walker's car would not start, so the heavy-set man "snatched" her out of the car and forced her into Mattox' car. Walker was pushed onto the floor of the back of the car, as appellant drove it three blocks west. She was then removed to a third car, where she was again forced onto the rear floor. A towel was placed over her head, and she was beaten and raped, first by the heavy-set man, and second by appellant. She was able to see appellant's face as he was raping her.

When the men had finished, they allowed her to leave the car. The men stole a few dollars from her, and some personal papers containing her address.

She solicited help at a nearby house, which (fortuitously) was the home of a policewoman. Patrolman Willene Mitchell testified that Walker was extremely upset, her hair was messed up, her clothing was soiled, and she was carrying her stockings. A medical examination revealed motile sperm on the victim's cervix. Police were unable to make an arrest at that time.

Three or four days after the rape, while Walker was reading on her porch, appellant allegedly stopped his car in front of her house, gestured obscenely, and drove away quickly.[1] Seventeen months later, in October 1981, Walker saw the pictures of Harold and Darryl Caldwell in the newspaper, in connection with their acquittal in another rape case.[2] She recognized appellant, and phoned police. Police accompanied her to a courtroom, where appellant was on trial in an unrelated matter. Appellant was the only black male in the room apart from a police officer. Walker was told by the police that the man she had identified from the photograph was in the courtroom, and to determine whether he was her assailant. After several minutes, appellant turned around, and Walker unequivocally identified him. She heard appellant's voice as he hollered when he was arrested.

On the basis of this evidence the jury found appellant guilty on all counts.

---

[1] A week or two later she thought she saw appellant lurking in the bushes across the street. When the man emerged from the bushes and she was able to see his face, she saw that it was not him.

[2] The Caldwells were acquitted of incidents of rape which allegedly occurred May 23-24, 1980. In that case the Caldwells allegedly abducted a young woman from a city street, and made her perform sex acts with them in front of a television camera. A film of the incident was introduced into evidence. The jury found that the young woman had consented to engaging in this conduct. The verdict was criticized by local news media.

Upon appeal, appellant assigns six errors for review by this court.

## I

In his first assignment of error appellant contends that the eyewitness identification testimony of Walker ought to be suppressed because it was the product of a suggestive police procedure, namely, the one-on-one confrontation in the Justice Center seventeen months after the rape.[3] See *Stovall* v. *Denno* (1967), 388 U.S. 293; *Simmons* v. *United States* (1968), 390 U.S. 377; *Neil* v. *Biggers* (1972), 409 U.S. 188; and *Manson* v. *Brathwaite* (1977), 432 U.S. 98.

This identification procedure employed by the police to identify appellant was clearly unnecessarily suggestive. Only one suspect was exhibited to Walker. She was told by the police that the man she had already identified from a photograph was in the courtroom. Appellant was the only black male in the courtroom apart from a police officer. She already knew that he had been acquitted of a rape which also involved the abduction of a young woman from a public street at night.

In determining whether a court should suppress identification testimony which has been tainted by suggestive police procedures, the Supreme Court has articulated a balancing standard. The totality of the circumstances is considered. The victim's opportunity to view the accused at the time of the offense, her degree of attention, the accuracy of descriptions given to police, her level of certainty, and the lapse of time from the event to the identification are measured against suggestiveness of the identification procedure. *Manson* v. *Brathwaite, supra.*

In the case at bar, the record demonstrates that Walker had ample opportunity to view appellant during the robbery of Mattox and during her abduction and rape. Her degree of attention was either heightened or skewed, due to her excited state. Her description of the accused was general in nature. She was unequivocal in her identification of appellant, both during the "show-up" procedure, and in court. Seventeen months had elapsed since the rape, before she identified appellant.

Two additional factors of importance are (1) that she saw appellant three days after the rape, and was therefore able to reinforce her memory of his features, and (2) that she identified him from a newspaper photograph *before* the police arranged the "show-up" in the justice center.

Absent these final two factors, and with the evidence in this posture, the trial court may have been required to suppress the testimony of the victim in this case. The county prosecutor and the Cleveland police are cautioned regarding the use of suggestive identification procedures. While such procedures are likely to result in positive identifications, such procedures are less likely to result in accurate ones.

In the case at bar, this court is persuaded that Walker demonstrated sufficient independent recollection of her assailant to defeat the appellant's motion to suppress. The first assigned error is not well-taken.

## II

In his second assignment of error,

---

[3] Assignment of Error No. 1

"The trial court committed prejudicial, reversible error in admitting the testimony of the identification witness at trial because of the procedures which were so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny Defendant-Appellant due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution."

appellant charges prejudicial error by the trial court for its refusal to instruct the jury pursuant to his request for special jury instructions.[4]

Appellant requested the court to give an instruction stressing the inherent unreliability of identification testimony. This instruction is from the Model Special Instructions on Identification, adopted by the United States Court of Appeals in *United States* v. *Telfaire* (C.A. D.C. 1972), 469 F. 2d 552.

The trial court refused to read this instruction, instead giving the jury the following neutral charge on the question of identification testimony, taken from the second paragraph of the *Telfaire* charge:

"Now, in reference to identification testimony in this case. An identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and make a reliable identification later.

"You must consider the credibility of each identification witness in the same way as any other witness. Consider whether she or he is truthful and consider whether he or she had the capacity and opportunity to make a reliable observation on the matter, and must be proven to your satisfaction by evidence beyond a reasonable doubt."

In *State* v. *Guster* (1981), 66 Ohio St. 2d 266 [20 O.O.3d 244], the Ohio Supreme Court ruled that the giving of instructions on the issue of identification testimony is committed to the sound discretion of the trial court. In *Guster,* the primary evidence presented by the state was the testimony of a police officer who observed his assailant for about twenty seconds, and who identified the appellant from a photograph two weeks later. The defendant requested the *Telfaire* instruction on identification testimony. The Supreme Court held that the trial court did not err in refusing to give the instruction, even though *no* instruction was given on the issue of eyewitness identification testimony.[5] The decision of the court was based upon the supposed reliability of the police officer's recollection and testimony.

In the case at bar, the witness' testimony is comparable to the testimony of the police officer in *Guster.* The trial judge in the case at bar, unlike the trial judge in *Guster,* did give a part of the *Telfaire* charge, which alerts the jury to their duty to carefully weigh the reliability of eyewitness testimony. This fact also distinguishes this case from *State* v. *Dale* (1982), 3 Ohio App. 3d 431, in which the Franklin County Court of Appeals reversed a criminal conviction for the reason that a requested *Telfaire* instruction was not read to the jury.

---

[4] Assignment of Error No. 2

"The trial court committed prejudicial, reversible error in denying Defendant-Appellant due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution when it refused to instruct the jury pursuant to Defendant-Appellant's request for special jury instructions where the requested instructions were appropriate and necessary under the circumstances of this case and where the substance of the requested instructions was not included in the general charge."

[5] The syllabus of the Supreme Court mis-

leadingly implies that other comparable instructions were given in the *Guster* case. The syllabus states:

"A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions."

Finally, at the close of the jury charge in the case at bar, the defense indicated that it had no additions, deletions or corrections to the charge. The defense was apparently satisfied with the partial *Telfaire* instruction read by the court. The second assigned error is not well-taken.

### III

Appellant contends in his third assignment of error that the court erred when it overruled his motion for change of venue, on the ground that prejudicial pretrial publicity about the appellant's involvement in this and one other rape[6] would prevent appellant from receiving a fair trial in the county.[7] See *Sheppard v. Maxwell* (1966), 384 U.S. 333.

The trial court deferred ruling on this motion until after *voir dire*. During *voir dire*, it was discovered that only two jurors remembered seeing news reports concerning the appellant. One of these jurors was excused. It is not clear from the record whether the other juror was seated; but the defense, in any event, did not exercise all of its peremptory challenges, and pronounced itself "satisfied with the panel."

This court is not convinced from the evidence that the jurors who were selected were influenced to any extent by news reports of this or other crimes of which the appellant had been accused. The third assigned error is not well-taken.

### IV

Appellant contends in his fourth assignment of error that he was prejudiced by the admission of two items of irrelevant evidence.[8] The first item was Detective Craft's testimony that Walker identified appellant at the Justice Center where he was "on trial." The second item was the admission of newspaper photographs of appellant and another man; appellant contends that only his photograph was relevant and admissible.

These matters were initially testified to by Walker without objection by the defense. Any objection to their subsequent admission was thereby waived. The fourth assigned error is not well-taken.

### V

In his fifth assigned error appellant contends the trial court committed reversible error when it failed to allow defense counsel to use the police reports to cross-examine the witnesses; and that this action deprived appellant of his constitutional right to a fair trial and the right to confront witnesses against him.[9]

Appellant subpoenaed the investigating police officer's reports. The trial court, with counsel participating, perused these reports prior to the testimony of the police officer. Contained therein were two points concerning which defense counsel sought to cross-

---

[6] See footnote 2.

[7] Assignment of Error No. 3
"Overruling the motion for change of venue constituted prejudicial, reversible error by the trial court, which deprived Defendant-Appellant of his Sixth and Fourteenth Amendments right to a fair and impartial trial."

[8] Assignment of Error No. 4
"The trial court committed prejudicial, reversible error in denying Defendant-Appellant's motion for a mistrial on the ground

that the admission of the irrelevant, prejudicial evidence deprived him of a fair and impartial trial."

[9] Assignment of Error No. 5
"Failure of the trial court to allow Defendant-Appellant's counsel to use the police reports, with exculpatory evidence, to cross-examine the witnesses deprived Defendant-Appellant of his Sixth and Fourteenth Amendments right to a fair trial and the right to confront witnesses against him; this constituted prejudicial, reversible error."

examine the police officer. Both of these points involved slight inconsistencies between Walker's statements to police and her testimony on the stand. If these parts of the report had qualified as the statements of Walker, and if the inconsistencies had been "material," they might have been employed to impeach her testimony pursuant to Crim. R. 16(B)(1)(g). But these statements could not be used to impeach the testimony of the police officer. The fifth assigned error is not well-taken.

## VI

For his sixth assigned error, appellant argues that the indictments were unlawfully deficient because they did not inform him whether he was charged with having personally committed two separate acts of rape against Walker, or whether (as was proved at trial) he stood accused of one act as principal and one act as aider and abettor.[10]

A charge of complicity may be presented in terms of the principal offense. R.C. 2923.03(F). Therefore, the procedure followed by the state was lawful. Furthermore, appellant could have, but did not, request a bill of particulars from the prosecuting attorney, "setting up specifically the nature * * * of the conduct of the defendant said to constitute the offense." The sixth assigned error is not well-taken.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MARKUS, P.J., and PRYATEL, J., concur.

---

[10] Assignment of Error No. 6

"Defendant-Appellant's conviction as to the rape counts in the indictment was prejudicial, reversible error because the indictment did not adequately inform him of the charges against him."