The STATE of Ohio, Appellee,

v.

JONES, Appellant.

[Cite as *State v. Jones* (1990), 67 Ohio App.3d 542.]

Court of Appeals of Ohio,
Lorain County.

No. 89CA004588.

Decided May 2, 1990.

*Gregory A. White,* Prosecuting Attorney, for appellee.

*Jeffrey J. Whitacre,* for appellant.

CACIOPPO, Presiding Judge.

Appellant, William Eric Jones, challenges his convictions, following a jury trial, for rape in violation of R.C. 2907.02(A)(2) and robbery in violation of R.C. 2911.02(A). We affirm.

On February 8, 1989, at approximately 12:05 a.m., Rebecca W. was raped and robbed as she walked through Langston Middle School parking lot toward her home. The attacker stood behind Rebecca during most of the ordeal and he made Rebecca close her eyes. However, Rebecca was able to observe her attacker for more than ten seconds as he stood over her. After the twenty-minute ordeal, the attacker left. Rebecca walked to her home within two minutes. She telephoned the Oberlin Police Department and gave a description of her attacker. She described him as a black male, twenty to thirty years old, tall, slender, with a scarf covering his lower face and possibly armed with a gun.

Thomas Miller, a patrolman patrolling the area where the crimes occurred, detained a black male walking towards the school about one block away. Officer Miller placed the suspect, Jones, in the patrol car and drove to Walnut Street.

Sergeant Mike Moorman escorted Rebecca out of her Walnut Street home to identify Jones. Sergeant Moorman stated to Rebecca that Jones "had done this kind of thing before." Rebecca observed Jones in the street as he was taken out of the patrol car. She told the officers that she would not want to state with absolute certainty that Jones was her attacker and she requested that she be permitted to hear Jones's voice. The officers placed Jones back in the cruiser and asked him to speak the particular phrases that Rebecca's attacker had spoken. Rebecca listened from outside the patrol car. Rebecca identified Jones as her attacker.

Rebecca was transported to a hospital where a rape kit examination was performed. A criminologist who found semen from the rape kit requested blood and saliva samples from Jones and Rebecca for serological testing. The

blood and saliva samples were taken but destroyed before any tests were performed when the freezer in which they were stored failed.

At trial, Rebecca identified Jones as her attacker. She testified that Officer Moorman's comment about Jones doing this kind of thing before did not influence her identification. She testified that she was able to recognize Jones "partly by his build and the upper part of his face but most of all his voice and what he said."

Jones's mother testified that Jones was home with her the early morning hours of February 8, 1989, until between 12:30 a.m. and 1:00 a.m. when he left to buy cigarettes.

The jury found Jones guilty of rape and robbery and he was sentenced. Jones appeals.

### Assignment of Error I

"The trial court committed prejudicial, reversible error in admitting the testimony of the identification witness at trial because of the procedures which were no [sic] unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the Defendant–Appellant due process of law in violation of the Fourteenth Amendment of [sic] the United States Constitution and Article I, Section 16 of the Ohio Constitution."

■ Jones argues that the eyewitness identification testimony of Rebecca should not have been admitted into evidence because it was the product of suggestive police procedure. The procedures include the one-on-one confrontation, at night, minutes after the attack, in the street near the scene of the attack, and the circumstances surrounding the voice identification. See *State v. Caldwell* (1984), 19 Ohio App.3d 104, 106, 19 OBR 191, 193, 483 N.E.2d 187, 189–90, citing *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Simmons v. United States* (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; and *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140.

This identification procedure employed by the police to identify Jones was clearly unnecessarily suggestive. Only one black male suspect was exhibited to Rebecca. Additionally, Rebecca was told that Jones had been involved in a similar attack.

The United States Supreme Court, in *Neil v. Biggers, supra,* at 199, 93 S.Ct. at 382, 53 L.Ed.2d at 411, outlined five factors that a trial court should consider in determining whether, under the totality of circumstances, an identification is reliable even though a confrontation procedure is suggestive.

These factors include:

"1) the opportunity of the witness to view the criminal at the time of the crime;

"2) the witness' degree of attention;

"3) the accuracy of the witness' prior description of the criminal;

"4) the level of certainty demonstrated by the witness at the confrontation;

"5) the length of time between the crime and the confrontation."

In the present case, Rebecca testified that she had more than ten seconds to observe Jones. She testified further that although it was night, the lighting in the parking lot was fairly good due to the illuminating street lights. Rebecca's description to the police was thorough. She described her attacker as a black male, twenty to thirty years of age and slender with a scarf covering his face. Moreover, Rebecca testified that the sergeant's statement that Jones "had done this kind of thing before" did not influence her. She testified that she recognized Jones by his build and face, but mostly by his voice. Most significantly, Rebecca identified Jones within ten minutes of the attack. The record amply supports the trial court's view that, after weighing the above factors, Rebecca's identification of Jones was reliable and there was no substantial likelihood of misidentification. The trial court, therefore, did not err in allowing the evidence to go to a jury. The first assignment of error is overruled.

## Assignment of Error II

"The trial court erred in failing to dismiss the rape charge against the appellant where the evidence at trial established that the prosecution failed to preserve all of the evidence in the case, resulting in severe prejudice to the appellant."

■ Jones argues that the trial court erred in not dismissing the charges when the police department allowed semen samples to be destroyed, thereby preventing Jones from using serological testing to exculpate himself.

■ Failure to preserve potentially useful evidence does not constitute a denial of due process of law unless a criminal defendant can show bad faith on the part of the police. *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281.

Jones argues that bad faith was shown by the police department's use of suggestive identification procedures. The United States Supreme Court, *Youngblood, supra,* at 56, 109 S.Ct. at 336, 102 L.Ed.2d at 288, fn. 2b discussed the following standard in determining bad faith:

"[T]he presence or absence of bad faith * * * must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."

Applying this standard to the facts of the case *sub judice*, we find an absence of bad faith on the part of the police. At trial, Officer Phil Verda testified that he transported the samples from Elyria Memorial Hospital to the Bureau of Criminal Investigation where the testing was done. He further testified that he did not know the result of the testing. Kenneth Ross, a criminologist at the Ohio Bureau of Criminal Identification testified that the integrity of the evidence was destroyed when the freezer failed. He testified that the meltdown of the freezer contents occurred when electricians tripped a circuit breaker in the freezers. Ross testified that he did not perform the serological tests because of the possibility that the melted water contaminated the samples.

The testimony indicates that at the time the samples were destroyed, the police did not have knowledge of their exculpatory or inculpatory value. Jones has failed to show bad faith on the part of the police. The second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD and REECE, JJ., concur.