JUDGMENT ENTRY
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry is an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Following a jury trial, defendant-appellant Andre Washington was found guilty of two counts of aggravated robbery with gun specifications, two counts of robbery, and one count of fourth-degree-felony possession of cocaine. The trial court sentenced Washington to two consecutive eight-year prison terms, with the two gun specifications merged to provide an additional three-year consecutive prison term. Washington now appeals with two assignments of error. We overrule Washington's assignments of error and affirm the trial court's judgment.
During the early afternoon of February 5, 2003, Jeremy Kotzbauer was working alone at his family's business, Natural Life Nutrition, when Washington came into the store and told Jeremy that somebody was "peeping" his car. Concerned, Jeremy looked out into the parking lot. (We use first names to distinguish between the Kotzbauer brothers.) Seeing nothing unusual, Jeremy turned around to find Washington pointing a gun at his face and demanding all the money in the cash register. Jeremy took the money out, placed it in a brown paper bag, and gave it to Washington. Washington then demanded the keys to Jeremy's car. As Washington took Jeremy to the back room to get his car keys, Jeremy tripped the silent alarm.
Washington left the store, got into Jeremy's car, and drove away. As Washington left, Jeremy's brother, Nathan, pulled into the parking lot. Jeremy told his brother what had happened, and Nathan proceeded to follow Jeremy's car. For the next twenty minutes, Nathan followed Washington as he drove Jeremy's car. In the futile hope of hastening his escape, Washington decided to take Jeremy's car onto northbound Interstate 75, where Nathan continued to follow. Unfortunately for Washington, a traffic accident made the typically bottlenecked traffic on the interstate even slower than usual. As they drove on the interstate, Nathan spotted an Arlington Heights police cruiser pulled over on the shoulder. Officer Chris Bundrew was issuing another driver a traffic citation. Nathan informed Bundrew of what had occurred. Bundrew then joined the pursuit.
Shortly thereafter, Bundrew stopped Jeremy's car. The driver got out of Jeremy's car, lay on the ground, and was placed in custody. Of course, the driver was Washington, and a search of his person uncovered the stolen money as well as some crack cocaine in his pocket. A search of Jeremy's car turned up the gun used in the robberies. Jeremy later described the robber as an African-American male, roughly between 6'2" and 6'3", of unknown weight, and wearing a winter jacket, skullcap, and blue gloves.
Later that night, the police showed Jeremy a one-man holding area where they were keeping Washington. They had already told Jeremy that they had the man who had robbed the store and now asked Jeremy if he could identify that man. Jeremy identified Washington as the robber. Nathan was shown a Polaroid photograph of only Washington and asked if the person in the photograph was the robber. Nathan identified Washington's picture as the person who had robbed his brother and the store.
In Washington's first assignment of error, he argues that his conviction was against the manifest weight of the evidence. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[1] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[2]
Following a review of the record, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice.[3] Washington was apprehended with both the instrumentalities and the fruits of the charged offenses. We cannot conceive of any theory whatsoever how someone other than Washington had robbed the store and stolen Jeremy's car. Washington was the only person apprehended in the stolen car with the gun and the stolen money some twenty minutes after the robberies. The witnesses established almost a "chain of custody" by following Washington from the scene of the crime until his apprehension. The first assignment of error is overruled.
Washington's second assignment of error concerns the admission of the pretrial identification of Washington by Jeremy and his brother. Washington contends that the method of identification was unreasonably suggestive and violated Washington's fair-trial rights under the United States and Ohio Constitutions.
Under the totality-of-circumstances test, the focus is upon the reliability of an identification, not the identification procedures.[4] Although identification procedures may be suggestive, as long as the challenged identification itself is reliable, it is admissible.[5]
Regarding Jeremy's identification of Washington at the police station later that night, Washington was the only person viewed in the holding cell at the time, and the police had told Jeremy that they believed Washington was the person who had robbed the store. But, a "one to one" confrontation at a police station is not, per se, impermissibly suggestive.[6]
Jeremy gave a detailed description of his assailant, his attention at the time of the crimes was focused solely on the assailant and his gun, the description the victim gave of the assailant's appearance and clothing accurately matched those of Washington at the time he was arrested, and the identification occurred only a few hours after the crimes while Jeremy's memory of the assailant was still fresh. Each of these factors suggested that the identification itself was reliable, despite the suggestive nature of the lineup and the comments of the police to Jeremy that Washington was the assailant.
The facts surrounding Jeremy's identification are similar to the identification by the victim in the Ninth Appellate District's decision in State v. Jones.[7] In Jones, the rape victim was shown one suspect near the rape scene and was told by the police that the suspect had engaged in similar conduct in the past.[8] Unlike the present case, the record in Jones made clear that the victim believed that the police statements did not influence her identification.[9] But the main factors the Jones court relied upon to hold that the identification was admissible as reliable were the facts that the description was thorough, that the victim recognized the defendant by his build, face, and voice, and that she identified him within ten minutes of the attack.[10]
Given the detail of the description, the precision with which Washington met that description, the attention Jeremy focused on his assailant during their conversations before and during the robbery, the fact that he observed the assailant in a well-lit environment, the lack of anything covering the assailant's face, the relatively short time between the commission of the crimes and the identification, and the remote chance of mistaken identification, we find no reason to disturb the trial court's finding that Jeremy's pretrial identification of Washington as the assailant was reliable despite the obvious suggestive nature of the identification procedures.
Regarding Nathan's identification of Washington from the use of a single-photograph "lineup," we conclude that the identification was also admissible as reliable despite its suggestive nature. Dicta in State v. Allen[11] indicates that a one-person photographic lineup, in some circumstances, may still be reliable despite its suggestive nature. In Allen, a bus driver identified the defendant as a passenger he had dropped off near a murder scene on the night of the murder after being shown only a picture of the defendant. The Ohio Supreme Court stated that this identification was reliable given the ability of the bus driver to see the defendant for seven minutes and to converse with him, and based on the defendant's possession of the bus transfer slip.[12]
In the present case, Nathan observed Washington in broad daylight, saw him drive off in Jeremy's car, observed Washington for 20 minutes as he pursued him in his car, and witnessed Washington being removed from Jeremy's car by law enforcement officers prior to his arrest. Additionally, the photographic "lineup" occurred relatively shortly after the commission of the crimes. Each of these factors, when viewed in totality, suggested that the identification of Washington as the person who had stolen Jeremy's car after robbing the store was reliable and admissible evidence.
Regardless, even if either or both of these identifications were improperly admitted, Washington has made no showing that the jury's verdict would have been otherwise had this evidence been suppressed. Washington was observed as the sole person to leave the store after the robbery. He was the only person to get into Jeremy's car, and he was observed uninterrupted for twenty minutes as he drove onto the interstate. When the car was pulled over by law enforcement officers, there was no dispute that the person apprehended was Washington, and that he had in his possession a gun, cocaine, and the stolen money. Based on the overwhelming evidence of his guilt, any possible error regarding the admission of these identifications would merely have been harmless error. But we hold that the trial court committed no error in admitting the identifications.
For the foregoing reasons, we overrule Washington's two assignments of errors and affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Gorman and Painter, JJ.
[1] See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
[2] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[3] Id; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[4] State v. Williams, 73 Ohio St.3d 153, 164, 1995-Ohio-275,652 N.E.2d 721.
[5] State v. Barnett (1990), 67 Ohio App.3d 760, 767-768,588 N.E.2d 887.
[6] See State v. Broom (1988), 40 Ohio St.3d 277, 284,533 N.E.2d 682; State v. Madison (1980), 64 Ohio St.2d 322,415 N.E.2d 272; State v. Jones (1976), 49 Ohio App.2d 170,359 N.E.2d 1386; State v. Jones (1990), 67 Ohio App.3d 542,587 N.E.2d 886; State v. Ward (1974), 44 Ohio App.2d 85,335 N.E.2d 727.
[7] State v. Jones (1990), 67 Ohio App.3d 542,587 N.E.2d 886.
[8] Id. at 544.
[9] Id. at 545.
[10] Id.
[11] State v. Allen, 73 Ohio St.3d 626, 634, 1995-Ohio-283,653 N.E.2d 675.
[12] Id.