DECISION AND JOURNAL ENTRY
{¶ 1} Defendant/Appellant appeals the denial of his motion to suppress and motion to dismiss by the Wayne County Municipal Court. We affirm.
 {¶ 2} Defendant was cited on March 6, 2007, for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(A), and operating a vehicle with a prohibited breath alcohol content in violation of R.C. 4511.19(A)(1)(D). Both charges are first-degree misdemeanors. The citations were issued at the scene of a car accident to which Defendant, a tow truck driver, reported to remove a damaged vehicle. On April 12, 2007, Defendant moved the trial court to suppress "all evidence from the point of seizure." A hearing was held on June 15, 2007, and the motion to suppress was denied on June 18, 2007. On May 11, 2007, Defendant filed a motion to dismiss the charges against him alleging that the State "destroyed materially exculpatory evidence, and or [sic] potentially useful evidence in bad faith." Specifically Defendant maintained that the videotape of March 6, 2007 incident had been "taped over by the [State's] *Page 2 
camera system" and was no longer available. The trial court denied the motion to dismiss on May 23, 2007. On June 27, 2007, Defendant pled no contest to driving under the influence and the State dismissed the second charge. Defendant was then sentenced to three days of imprisonment, 27 days of house arrest, 18 months of probation, a $700.00 fine, and two-year license suspension.
 {¶ 3} Defendant timely appealed and raises two assignments of error.
 Assignment of Error No. 1 "The trial court erred when it overruled [Defendant's] motion to suppress evidence."
 {¶ 4} Defendant argues that the trial court should have suppressed "all evidence from the point of seizure" because his submission to field sobriety tests was not voluntary and Officer Hershey did not have a reasonable, articulable suspicion of any wrongdoing. Specifically, Defendant argues that he "merely submitted to Trooper Hershey's show of authority" when he took the field sobriety tests and that "[a]ny reasonable person in these circumstances would not have felt free to leave the scene and refuse to submit to field sobriety tests." Defendant maintains that since his submission was not voluntary, a "moderate" odor of alcohol and an admission to consuming two beers is not a reasonable articulable suspicion of wrongdoing so as to allow Hershey to detain him for the purposes of conducting field sobriety tests. This is especially true, Defendant argues, because Hershey saw Defendant operate his "large wrecker" at least twice with no problems.
 "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, appeal not allowed (1996), 77 Ohio St.3d 1488, 673 N.E.2d 146, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653, *Page 3 645 N.E.2d 831. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. `The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo.' State v. Russell
(1998), 127 Ohio App.3d 414, 416, 713 N.E.2d 56. (Italics sic)." State v. Catanzarite, 9th Dist. No. 22212, 2005-Ohio-260, at ¶ 6.
 {¶ 5} The trial court's June 18, 2007 entry found that Trooper Hershey had been dispatched to the scene of an accident and called dispatch for a tow truck. Hershey saw Defendant arrive at the scene and did not "see anything wrong with defendant's driving." As Hershey was conducting an inventory of the crashed vehicle and Defendant was near the rear of the vehicle, Hershey "smelled a moderate odor of alcohol coming from defendant and an odor of `Big Red' gum." Defendant initially denied he had been drinking because he feared "an O.V.I. investigation," but then admitted to drinking two beers at the shop prior to reporting to the scene. Defendant was asked to remove his gum and Hershey again smelled a moderate odor of alcohol. Hershey asked Defendant to perform three field sobriety tests, which Defendant failed. Defendant was then arrested. The trial court's entry finally noted that Defendant,
 "took the [field sobriety tests] because he wanted to cooperate with Trooper Hershey. He felt he had to take the tests, but never asked the Trooper if he had to. The defendant was not under arrest, was not in cuffs and not in the cruiser. The defendant stated he was not forced to do the [field sobriety tests] and was never promised anything."
 {¶ 6} Our review of the record and the transcript demonstrates that the trial court's factual determinations are supported by competent, credible evidence. "Accordingly, we turn to the trial court's legal conclusions to conduct a de novo review." Catanzarite at ¶ 8, citingRussell, 127 Ohio App.3d at 416.
 {¶ 7} "If an encounter between a person and the police is consensual, then no `stop' has been made and no Fourth Amendment concerns are at issue." State v. Salas, 9th Dist. No. 21891, 2004-Ohio-6274, at ¶ 7, citing Florida v. Royer (1983), 460 U.S. 491, 497-98 and State v. *Page 4 Johnson (1993), 85 Ohio App.3d 475, 478. "For purposes of applying theFourth Amendment, a non-consensual stop will be deemed to have occurred when a reasonable person would not have felt free to decline the officer's request and the defendant actually yielded to a show of authority by officers." Salas at ¶ 9, citing California v. HodariD. (1991), 499 U.S. 621, 626. We further explained the law of consensual encounters in State v. Travis, 9th Dist. No. 06CA3098, 2008-Ohio-1042, where we held:
 "Police may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity. [United State v. Mendenhall (1980), 446 U.S. 544, 556]. Encounters between the police and the public are consensual when the police approach an individual in a public place, engage the person in conversation, and request information, as long as the person is free to walk away. Id. at 554; State v. Jones (1996), 112 Ohio App.3d 206, 211, 678 N.E.2d 285. An officer's request to examine a person's identification or search his or her belongings does not render an encounter non-consensual, nor does the officer's neglect to inform the individual that he is free to walk away. See Florida v. Rodriguez (1984), 469 U.S. 1, 105 S.Ct. 308; Florida v. Bostick (1991), 501 U.S. 429, 111 S.Ct. 2382; Jones, supra, at 211-13. A `seizure' giving rise to Fourth Amendment concerns occurs only when, in view of all the circumstances surrounding the incident, the police officer, either by physical force or by show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's request and walk away. State v. Williams (1990), 51 Ohio St.3d 58, 61, 554 N.E.2d 108; Jones, supra, at 211. Factors suggesting that a seizure has occurred include the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the person. Mendenhall, supra at 554; Jones, supra, at 211." Travis at ¶ 10.
 {¶ 8} In the present case, only Hershey was present at the accident scene. Defendant testified that a second trooper arrived at the scene, but not until he after he had consented to the field sobriety tests. There is nothing in the record evidencing the use of a weapon, physical touching, or that Hershey used language to suggest that compliance with his request was required. Defendant testified that Hershey "wanted to do the sobriety test," that he did not know he had a right to refuse the test, that he "felt the best thing to do was to cooperate" and that he "wanted to go home." Hershey testified that he asked Defendant to perform the field sobriety *Page 5 
tests, that he did not tell him he was under arrest, that he did not cuff him and/or make any threats or promises. Hershey further stated that Defendant did not appear frightened and understood his request. Hershey finally stated that he did not know what he would have done had Defendant refused to take the tests; he would have been "left with a decision to make at that point." Based on the foregoing, we hold that Defendant consented to the field sobriety tests.
 {¶ 9} Moreover, "[p]robable cause is not necessary to conduct a field sobriety test. Rather, reasonable suspicion of criminal activity will support further investigation. Essentially, reasonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act." City of Wadsworth v.Engler (Dec. 15, 1999), 9th Dist. No. 2844-M, at *3, citing State v.Gustin (1993), 87 Ohio App.3d 859, 860 and State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716, at *4. Hershey had reasonable suspicion of a criminal act, which was supported by specific articulable facts. Trooper Hershey smelled a moderate odor of alcohol. Defendant lied about drinking and then admitted to drinking two beers, which created a reasonable, articulable suspicion of criminal activity sufficient to support further investigation. See, e.g., State v. Duffy, 6th Dist. No. 0T-06-014, 2007-Ohio-199, at ¶ 11 (holding that "odor of alcohol * * * and appellant's admission to consuming alcohol provided reasonable articulable suspicion of impaired driving to warrant further detention for an investigation." Id.); State v. Toler (Jan. 30, 1998), 2d Dist. No. 97 CA 47, at *2 (holding that "the strong odor of alcoholalone is sufficient to provide an officer with reasonable suspicion of alcohol impairment," such that field sobriety tests are warranted);State v. Blackburn (1996), 115 Ohio App.3d 678, 680 (approving officer's administration of field sobriety tests after noticing an odor of alcohol and after Defendant admitted to consuming "a few beers") (Emphasis sic). *Page 6 
 {¶ 10} Based on the foregoing, we hold that Defendant consented to the field sobriety tests and that there were reasonable articulable facts to support a reasonable suspicion of criminal activity sufficient for Hershey to have conducted the field sobriety tests. The trial court properly denied Defendant's motion to suppress. Defendant's first assignment of error is overruled.
 Assignment of Error No. 2 "The trial court erred to the prejudice of the [Defendant] when the trial court overruled his motion to dismiss based upon the State of Ohio's destruction of materially exculpatory evidence, and or potentially useful evidence in bad faith in violation of Defendant's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
 {¶ 11} Defendant asserts that the trial court erred when it denied his motion to dismiss based on the State's destruction of materially exculpatory evidence in the form of the March 6, 2007 videotape made from Hershey's police cruiser. Defendant further maintains that the State acted in bad faith when it failed to maintain the videotape.
 {¶ 12} We review a denial of a motion to dismiss de novo. State v.Stallings, 150 Ohio App.3d 5, 2002-Ohio-5942, at ¶ 6, citing State v.Benton (2000), 136 Ohio App.3d 801, 805.
 {¶ 13} "In a criminal proceeding, if the prosecution withholds material, exculpatory evidence, a violation of the defendant's due process right to a fair trial occurs." State v. Flowers (Feb. 26, 1997), 9th Dist. No. 2564-M, at *3, citing State v. Johnston (1988),39 Ohio St.3d 48, 60 and Brady v. Maryland (1963), 373 U.S. 83. "`Exculpatory evidence' is defined as evidence favorable to the accused which, `if disclosed and used effectively, * * * may make the difference between conviction and acquittal.'" State v. Rowe (1993), 92 Ohio App.3d 652,666, quoting U.S. v. Bagley (1985), 473 U.S. 667, 676. "Evidence is material if it is reasonably probable the result of the trial would have been different had the evidence been disclosed to the defense."Flowers at *3, citing Johnston, 39 Ohio St.3d at 61. "A `reasonable probability' is a probability *Page 7 
sufficient to undermine confidence in the outcome." Flowers at *3, citing State v. Davis (Apr. 18, 1990), 9th Dist. No. 88CA004390, at 49 and Bagley, 473 U.S. at 682. It is Defendant's burden to establish that the evidence is both favorable and material and that there is reasonable probability that the outcome would have been different if the evidence had been provided. See, State v. Davis, 116 Ohio St.3d 404, 449,2008-Ohio-2, at ¶ 338-39 (holding that Defendant did not provide sufficient evidence to demonstrate that the evidence was material and/or that there was "a reasonable probability that the result of the proceeding would have been different.") "Failure to preserve [merely]potentially useful evidence does not constitute a denial of due process of law unless a criminal defendant can show bad faith on the part of the police." (Emphasis added.) State v. Jones (1990), 67 Ohio App.3d 542,545, citing Arizona v. Youngblood (1988), 488 U.S. 51.
 {¶ 14} In State v. Dunn, 9th Dist. No. 03CA0037, 2004-Ohio-2249, we stated:
 "The United States Supreme Court has held that `unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' Arizona v. Youngblood (1988), 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281. Bad faith implies more than bad judgment or negligence; instead, it `imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' (Internal citation omitted.) Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 276, 452 N.E.2d 1315. Bad faith on the part of the police must be evaluated from the knowledge of the police regarding the exculpatory value of evidence at the time of the alleged destructive act. State v. Jones (1990), 67 Ohio App.3d 542, 546, 587 N.E.2d 886, citing Youngblood, 488 U.S. at 56. If the State acts in bad faith by ignoring a valid request to preserve evidence, the burden shifts to the State to show that the evidence was not exculpatory. State v. Sailors (Oct.7, 1992), 9th Dist. No. 2723, at 7, citing Columbus v. Forest (1987), 36 Ohio App.3d 169, 173, 522 N.E.2d 52." Dunn at ¶ 63.
 {¶ 15} The Defendant has not attempted to establish that the videotape was exculpatory and merely argues that it could be exculpatory and/or useful. Nor does the record establish that *Page 8 
Defendant formally requested the State to preserve the videotape thereby shifting the burden to the State to show that the videotape was not exculpatory. Sailors at *3.
 {¶ 16} Finally, Defendant has not otherwise met his burden of establishing that the videotape was erased in bad faith. In State v.Geeslin, 116 Ohio St.3d 252, 2007-Ohio-5239, the Supreme Court of Ohio addressed a factual scenario similar to this one and found that Defendant failed to establish that police acted in bad faith. Id. at ¶ 14. We note that the Supreme Court of Ohio's holding inGeeslin was based on the Defendant's failure to establish bad faith after a hearing during which the police officer testified as to what happened to the videotape. Id. We acknowledge that there was no such hearing here. Defendant did not request such a hearing, however. Nor did Defendant question Hershey at the suppression hearing about the videotape so as to put facts in the record to establish bad faith on the part of the police or the tape's potential exculpatory value. "[T]he presence or absence of bad faith * * * must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood, 488 U.S. at 56, fn1. Defendant failed to meet this burden.
 {¶ 17} For the foregoing reasons, we overrule Defendant's second assignment of error.
 {¶ 18} Each of Defendant's assignments of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 9 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, P. J. CONCURS
 MOORE, J. CONCURS IN JUDGMENT ONLY *Page 1