OPINION
{¶ 1} This is an accelerated calendar case, submitted to this court on the record and the brief of appellant, the state of Ohio. Appellee, Tanya J. Newrones ("Newrones"), has not filed an appellate brief. The state appeals the judgment entered by the Portage County Municipal Court, Ravenna Division. The trial court granted Newrones' motion to suppress. For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings.
 {¶ 2} At 1:30 a.m. on October 30, 2002, Officer Troy Beaver ("Officer Beaver") of the Streetsboro Police Department noticed a parked vehicle in a CVS parking lot. The vehicle's driver-side door was open. As Officer Beaver approached the vehicle to investigate, the driver closed the door and drove out of the parking lot. At the suppression hearing, Officer Beaver identified the driver as Newrones.
 {¶ 3} Officer Beaver followed Newrones, because he felt it was suspicious for an occupied car to be parked outside the CVS store after hours. Officer Beaver did not activate his overhead lights or attempt to stop Newrones' vehicle at this time.
 {¶ 4} Officer Beaver followed Newrones as she traveled north on Route 43 for about two miles. He testified that she was weaving during this time, as her tires touched the white line three times and the centerline twice. However, her tires never crossed either line. Also, he testified that Newrones was not speeding, as she was traveling thirty-five m.p.h. in the thirty-five m.p.h. zone and increased her speed to forty m.p.h. when the speed limit changed to fifty m.p.h.
 {¶ 5} Newrones signaled and turned right onto Crain Center, an industrial parkway. Officer Beaver testified that many of the businesses in the parkway were closed at that time and, regarding the few that had midnight shifts, none of them had shifts that started at that time. Officer Beaver continued north on Route 43, passing Crain Center. However, he slowed and continued to observe Newrones. Thereafter, Newrones executed a U-turn on Crain Center and returned to the intersection at Route 43. In response to the U-turn, Officer Beaver turned around, turned onto Crain Center, and stopped Newrones' vehicle. Officer Beaver indicated that he stopped the vehicle based on the totality of the circumstances, including being parked in front of the closed CVS, weaving, and turning into a business district at 1:30 a.m.
 {¶ 6} Officer Beaver testified that Newrones exited her vehicle and began yelling at him and at a male passenger in her vehicle. He testified her speech was slurred, her eyes were bloodshot, and there was a strong odor of alcoholic beverage on her breath. Newrones failed a horizontal gaze nystagmus test. She refused to take any other field sobriety tests. Officer Beaver arrested Newrones and cited her for driving under the influence of alcohol.
 {¶ 7} Newrones pled not guilty to the charge against her. She filed a motion to suppress all evidence against her. She alleged that Officer Beaver lacked reasonable suspicion to stop her vehicle and lacked probable cause to arrest her. The trial court held a hearing on the matter. Officer Beaver testified at the hearing. At the close of the hearing, the trial court ruled that Newrones' arrest was constitutional, in that Officer Beaver had sufficient probable cause to execute the arrest. However, the trial court did not rule on the reasonable suspicion issue from the bench. In a subsequent judgment entry, the trial court found that Officer Beaver did not have reasonable suspicion to conduct an investigatory stop of Newrones' vehicle.
 {¶ 8} The state has timely appealed the trial court's judgment pursuant to R.C. 2945.67, which permits the state to appeal a decision that grants a motion to suppress evidence.[1] The state raises the following assignment of error:
 {¶ 9} "The trial court erred in granting the defendant's motion to suppress when the state met its burden of proof that the officer had a reasonable and articulable suspicion to perform an investigatory stop."
 {¶ 10} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citing State v.Fanning (1982), 1 Ohio St.3d 19. Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. Id., citing State v. McNamara
(1997), 124 Ohio App.3d 706, 707.
 {¶ 11} "The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent." State v. Gedeon (1992),81 Ohio App.3d 617, 618, citing Terry v. Ohio (1968), 392 U.S. 1. This standard applies to individuals driving motor vehicles. Id., citing State v. Heinrichs (1988), 46 Ohio App.3d 63. Finally, "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. Reviewing the totality of the circumstances to determine whether an officer had reasonable suspicion to justify an investigative stop or detention is an objective, rather than subjective, inquiry. State v. Robinette, 80 Ohio St.3d 234,1997-Ohio-343, paragraph one of the syllabus.
 {¶ 12} The trial court held that "once Officer Beaver abandoned the pursuit of the Defendant's vehicle and saw no further erratic driving or violations of the law, the Officer is without reasonable cause to make an investigative stop." We have found no authority to support the trial court's legal conclusion. There is case law holding that once an officer abandons the original purpose of an actual traffic stop, he may not continue to detain an individual without additional reasonable suspicion to do so. See, e.g., State v. Eastham (Dec. 19, 1995), 10th Dist. No. 95APA05-566, 1995 Ohio App. LEXIS 5641, at 8-10. However, the trial court did not use the term "abandon" in this context.
 {¶ 13} The trial court's holding seems to imply that once an officer abandons a pursuit, all of the events prior to the abandonment are erased. We disagree. The totality of the circumstances test must still be applied. In Kent v. Etter,
this court held that an officer's observation of an individual stumbling when entering a vehicle could be used under the totality of the circumstances test to justify an investigatory stop, even though there was a break during which the officer was not directly observing the suspect. Kent v. Etter (Mar. 8, 1996), 11th Dist. No. 95-P-0091, 1996 Ohio App. LEXIS 887, at 6. Similarly, Officer Beaver could still use his initial observations of Newrones' vehicle as part of the totality of the circumstances for reasonable suspicion.
 {¶ 14} The state asserts that Officer Beaver was justified in stopping Newrones' vehicle based on a totality of the circumstances. We agree.
 {¶ 15} Newrones' vehicle was parked in the parking lot of a closed CVS store. She drove off as soon as the police car approached. Depending on the specific facts, being parked outside a closed business in a high-crime area may justify an investigatory stop. See State v. Richardson, 9th Dist. No. 21144, 2003-Ohio-246, at ¶ 10-12. On the other hand, in State v.Isabell, an individual was parked in the parking lot of a golf course at 9:00 p.m. and left the parking lot after seeing a police cruiser. State v. Isabell (Sept. 30, 1993), 11th Dist. No. 92-L-107, 1993 Ohio App. LEXIS 4718. The majority held the officers did not have reasonable suspicion to stop the vehicle because there was no evidence the golf course was located in a high-crime area and the officers did not observe any erratic driving after the vehicle left the parking lot. Id. at 8-9.
 {¶ 16} In the case sub judice, Officer Beaver testified that the CVS store was closed. However, he stated the store is located in a plaza and did not indicate whether any other businesses were open at that time. In addition, he did not testify that the parking lot is located in a high-crime area. Neither did he indicate he was concerned for the well-being of the occupant. Thus, insufficient facts were alleged to justify an investigatory stop.
 {¶ 17} The fact that a vehicle is weaving within its lane may be used to justify an investigative stop. Gedeon at 619. However, this court has subsequently held a stop may be lawful based solely on weaving, but only when the extent of the weaving is substantial. State v. Farley (Feb. 11, 1994), 11th Dist. No. 93-L-078, 1994 Ohio App. LEXIS 470; Willoughby v. Mazura (Sept. 30, 1999), 11th Dist. No. 98-L-012, 1999 Ohio App. LEXIS 4642;Mentor v. Phillips, 11th Dist. No. 2001-L-100, 2002-Ohio-4512, at ¶ 15-19.
 {¶ 18} Officer Beaver testified that Newrones' vehicle was "weaving continuously." Further, he stated the vehicle actually drove on the white line three times and touched the center line twice.
 {¶ 19} Arguably, Newrones' weaving could be classified as substantial or erratic, thereby justifying an investigative stop based solely upon the weaving. However, Officer Beaver did not stop Newrones' vehicle based solely on the weaving. He did not initiate the stop until Newrones had performed the U-turn on Crain center. At the suppression hearing, he testified that he initiated the stop based on a totality of the circumstances.
 {¶ 20} The trial court asked Officer Beaver if Newrones' U-turn was a violation of any sort. Officer Beaver responded that he was "not familiar with that section." While we presume the U-turn was legal, it was indicative of "evasive" action on the part of Newrones. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v.Wardlow (2000), 528 U.S. 119, 124. This court has previously applied this rationale to a situation were an individual is driving an automobile and being followed by a police officer.Mentor v. Rice (June 26, 1998), 11th Dist. Nos. 97-L-114 and 97-L-137, 1998 Ohio App. LEXIS 2917. In Mentor v. Rice, this court concluded that there were two logical conclusions for an individual turning down two side streets while being followed by a police officer, to-wit, the individual was evading the officer or the individual was merely going about his business. Id. at 9.
 {¶ 21} In examining whether Newrones was merely going about her business or was evading the police, the officer can consider the surrounding circumstances. Officer Beaver did not specifically describe Newrones' conduct as evasive, but explained that it was unusual. He testified that he was not aware of any of the businesses having a shift that begins at that hour. Apparently, after realizing that Officer Beaver was no longer following her, Newrones conducted an abrupt U-turn. Even Newrones' trial counsel noted that her actions may have been evasive by stating during his closing argument at the suppression hearing, "[Newrones] turned around to make a U-turn perhaps to get [Officer Beaver] off her back * * *." Again, we note Officer Beaver testified that he decided to stop Newrones based on the totality of the circumstances. Thus, the U-turn was not the sole reason for the stop but, rather, the final act of suspicious conduct.
 {¶ 22} A review of the totality of the circumstances in this case supports the conclusion that Officer Beaver had reasonable suspicion to stop Newrones' vehicle. Newrones was parked in a business parking lot after hours. When Officer Beaver approached her vehicle, she closed her door and drove away. She was continuously weaving while driving on State Route 43, touching both the centerline and the white line. Finally, she took evasive action to avoid Officer Beaver, by turning onto an industrial parkway at 1:30 a.m. and immediately executing a U-turn after Officer Beaver had driven past the parkway. While any of these events, individually, may not have been sufficiently indicative of criminal activity to justify an investigatory stop, when they are viewed in totality, they are sufficient to justify the stop.
 {¶ 23} The state's assignment of error has merit.
 {¶ 24} The judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings.
Grendell, J., concurs.
O'Neill, J., dissents with Dissenting Opinion.
[1] We note the trial court did not dismiss the charge against Newrones or enter a judgment of acquittal. Thus, the Double-Jeopardy Clause does not prevent Newrones from standing trial if the trial court's judgment on the motion to suppress is reversed. In re Mojica (1995), 107 Ohio App.3d 461, 466.