DECISION AND JUDGMENT ENTRY
{¶ 1} Marcus A. Travis ("Appellant") appeals from a decision of the Scioto County Court of Common Pleas overruling his motion to suppress and finding him guilty of possession of drugs in violation of R.C.2925.11, a felony of the first degree. He contends the trial court erred when it denied his motion to suppress, as his seizure was not based on a reasonable articulable suspicion, and his consent to search was not valid, based on the violation of his Fourth Amendment rights. Because there was reasonable suspicion, based upon specific and reasonable facts, to justify an *Page 2 
investigatory stop of the Appellant, as well as the protective searching yielding the evidence the Appellant seeks to suppress, we affirm the judgment of the trial court.
 I. Facts {¶ 2} On February 24, 2006, Portsmouth police officers conducted a foot patrol in the Farley Square area of Portsmouth, Scioto County, Ohio. Farley Square consists of government subsidized housing that is operated by the Portsmouth Metropolitan Housing Association. Due to prior problems involving illegal drugs and other crimes and violence, the Farley Square area is posted with signs indicating that only residents of the apartments and their guests can be on the property.
 {¶ 3} At approximately 7 p.m., the officers observed the Appellant walking through the property. As they approached the Appellant, he appeared to increase his step and walk faster. When the officers caught up with him, they asked him who he was visiting on Portsmouth Metropolitan Housing Authority property, to which he replied "Sasha." One of the officers advised the Appellant that the individual he was looking for did not live in Farley Square, and further advised the Appellant that Farley Square is for residents and guests only. Upon ascertaining that the Appellant was not visiting a resident of Farley Square and determining that he was likely *Page 3 
trespassing, the officer asked the Appellant for identification, and he produced an identification card. The card the Appellant produced clearly did not belong to him. The officer then ran the social security number listed on the identification card, and the other officer began to pat down the Appellant to check for weapons. As the officer patted the Appellant down, he felt a large object in the left breast pocket area of the coat he was wearing. The officer asked the Appellant what the lump was, and the Appellant responded, "[T]hat's my stuff. You can check." As the officer began to reach inside the Appellant's coat pocket, the Appellant jerked his body out of the coat, away from the officer, and took off running into a nearby wooded area.
 {¶ 4} The Appellant was apprehended by the officer after a very brief chase and was subsequently properly identified. The lump in the Appellant's coat pocket was later determined to be a plastic bag containing approximately 175 grams of crack cocaine. On March 6, 2006, a Scioto County Grand Jury issued a two-count indictment charging the Appellant with possession of drugs in violation R.C. 2959.11(A)/(C)(4)(f) and 2941.1410 ("count one") and trafficking in drugs in violation of R.C. 2925.03(A)/(C)(4)(g) and 2941.1410 ("count two"). The indictment also set *Page 4 
forth a forfeiture specification relating to $1, 111.00 which officers found on the Appellant's person when he was arrested.
 {¶ 5} On May 10, 2006, the trial court held a hearing on the Appellant's motion to suppress the 175 grams of cocaine found on his person. At the conclusion of the hearing, the trial court overruled the Appellant's motion. On May 15, 2006, pursuant to a plea agreement, the Appellant entered a no contest plea to count one of the indictment and count two of the indictment was dismissed. The trial court found the Appellant guilty and sentenced him to a term of ten years in prison. The Appellant now appeals the decision of the trial court, asserting the following assignment of error:
 II. Assignment of Error {¶ 6} 1. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE GAINED FROM HIM IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.
 III. Legal Analysis {¶ 7} In his sole assignment of error, the Appellant argues the trial court erred when it denied his motion to suppress evidence that was obtained in violation of his constitutional rights. As a preliminary matter, appellate review of a decision on a motion to suppress presents mixed questions of law and fact. State v. McNamara (1997),124 Ohio App.3d 706, 710, citing *Page 5 United States v. Martinez (CA.11, 1992), 949 F.2d 1117, 1119. In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583; see, also, State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts are true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690, 697,116 S.Ct. 1657, 134 L.Ed.2d 911; State v. Klein (1991), 73 Ohio App.3d 486, 488,597 N.E.2d 1141; Williams, Guysinger, supra.
 {¶ 8} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically and well-delineated *Page 6 
exceptions. California v. Acevedo (1991), 500 U.S. 565, 111 S.Ct. 1982,114 L.Ed.2d 619; State v. Tincher (1988), 47 Ohio App.3d 188,548 N.E.2d 251. If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.
 {¶ 9} Not every encounter between a citizen and a law enforcement official implicates the state and federal prohibition on unreasonable searches and seizures. California v. Hodari D. (1991), 499 U.S. 621,111 S.Ct. 1547; State v. Taylor (1995), 106 Ohio App.3d 741, 667 N.E.2d 60. The United States Supreme Court has created three categories of police-citizen contact to identify the separate situations where constitutional guarantees are implicated: (1) consensual encounters, (2) investigative or "Terry" stops, and (3) arrests. See Florida v.Royer (1982), 460 U.S. 491, 501-507, 103 S.Ct. 1319; United States v.Mendenhall (1980), 446 U.S. 544, 553, 100 S.Ct. 1870.
 {¶ 10} Police may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity. Mendenhall, supra, at 556. Encounters between the police and the public are consensual when the police approach an individual in a public place, engage the person in conversation, and request information, as long as the person is free to walk away. Id. at 554;State v. Jones (1996), 112 Ohio App.3d 206, *Page 7 
211, 678 N.E.2d 285. An officer's request to examine a person's identification or search his or her belongings does not render an encounter non-consensual, nor does the officer's neglect to inform the individual that he is free to walk away. See Florida v. Rodriguez
(1984), 469 U.S. 1, 105 S.Ct. 308; Florida v. Bostick (1991),501 U.S. 429, 111 S.Ct. 2382; Jones, supra, at 211-13. A "seizure" giving rise toFourth Amendment concerns occurs only when, in view of all the circumstances surrounding the incident, the police officer, either by physical force or by show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's request and walk away. State v. Williams (1990), 51 Ohio St.3d 58, 61,554 N.E.2d 108; Jones, supra, at 211. Factors suggesting that a seizure has occurred include the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the person. Mendenhall, supra at 554; Jones, supra, at 211.
 {¶ 11} In the case sub judice, multiple police officers were present when the exchange in question took place. Additionally, when the Appellant produced a false identity card, one of the officers began to pat him down to check for weapons. In view of these and other attending circumstances, the *Page 8 
Appellant's detention amounted to a seizure giving rise toFourth Amendment concerns.
 {¶ 12} In his sole assignment of error, the Appellant also contends that the officers involved lacked a reasonable, articulable suspicion to make an investigatory stop, thereby violating his Fourth Amendment protections against unreasonable searches and seizures. Generally, warrantless searches and seizures "are per se unreasonable under theFourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. U.S. (1967), 389 U.S. 347, 357,88 S.Ct. 507. The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion, based upon specific and reasonable facts, which, taken together with rational inferences from those facts, warrants the belief that criminal behavior is imminent. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889; United States v. Brignoni-Ponce (1978), 422 U.S. 873,95 S.Ct. 2574, 45 L.Ed.2d 607; State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271. To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped is about to commit a crime. Terry, supra, at 21. Additionally, the officer must have reason to believe he *Page 9 
is dealing with an armed and dangerous individual; the officer need not be absolutely certain that the individual is armed, but the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Id. at 27. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 178, 524 N.E.2d 489.
 {¶ 13} The totality of the circumstances facing the officers in the instant case involves the following: one of the officers involved in the altercation testified he was very familiar with the residents and area of Farley Square, which has a notorious reputation for drug trafficking, use, and violence. Farley Square is also an area where physical access is limited to residence and their guests. The testifying officer's familiarity with the area was founded on his experiences patrolling the area on several previous occasions. When the officers saw an unknown male, the Appellant, who was not a resident, crossing Farley Square, they approached him to inquire about his purpose for being on the property. The officers' approach caused the Appellant to increase his step and walk more rapidly. Each of these factors contributes to the reasonable articulable suspicion necessary to justify an investigative stop. *Page 10 
 {¶ 14} Reasonable articulable suspicion supporting the stop was also enhanced when the Appellant's responses to the officers' initial inquiries indicated that he was not a resident of Farley Square and did not fall into the guest or invitee categories that would make his presence in Farley Square permissible. The legal consequence of these facts meant that the Appellant was trespassing in the Farley Square area. Upon being asked for identification, the Appellant produced a card that clearly had someone else's photograph on it.
 {¶ 15} In light of these circumstances, the officers had sufficient grounds to conduct a pat-down search of the Appellant for weapons. "The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v. Evans (1993), 67 Ohio St.3d 405, 413,618 N.E.2d 162. Further, "[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and other." State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus. Some of the relevant circumstances include furtive movements, a noticeable bulge which could be a weapon, and the officers' familiarity with an area that is known for a high incidence of *Page 11 
drugs or other criminal activity. Id. Farley Square, as mentioned supra, is an area that is known for a high incidence of drugs and other criminal activity. The officers on foot patrol there were very familiar with the area and the issues common to the area. Because they suspected the Appellant of drug trafficking, a crime for which he was likely to be armed, the officers' protective search of the Appellant was permissible. Additionally, the officer conducting the protective search testified that at the point during the search when he felt a lump in the Appellant's coat pocket and asked the Appellant what it was, the Appellant gave the officer consent to check the pocket. The officer testified that almost immediately after the officer felt the large lump in the Appellant's pocket, the Appellant threw his coat off and "took off running." At that point, the officers discovered a plastic bag containing 175 grams of crack cocaine in the Appellant's coat pocket.
IV. Conclusion
 {¶ 16} In light of the totality of the circumstances surrounding the investigative stop of the Appellant, we conclude there is competent, credible evidence supporting the trial court's decision denying the motion to suppress. Accordingly, we overrule the Appellant's sole assignment of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J.: Concurs in Judgment and Opinion.
 Harsha, J.: Concurs in Judgment Only. *Page 1