[Cite as *State v. Jones*, 2012-Ohio-1523.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 11CA13 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | <u>DECISION AND</u> |
| v. | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| JEFFREY J. JONES, | : | |
| | : | **RELEASED 03/16/12** |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Rolf Baumgartel, Marietta, Ohio, for appellant.

Roland W. Riggs, III, Marietta City Law Director, and Daniel W. Everson, Marietta City Assistant Law Director, Marietta, Ohio, for appellee.

_____

Harsha, J.

{¶1}     A jury found Jeffrey Jones guilty of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI").  Jones now appeals the trial court's denial of his motion to suppress evidence obtained after a patrolman approached his stationary vehicle and opened the driver's side door, allowing the officer to smell alcohol in the vehicle.  Jones claims the officer lacked reasonable suspicion to approach the vehicle and open his door.  However, the patrolman did not need any justification to approach the vehicle and knock on the window in an effort to speak to Jones because this type of contact constitutes a "consensual encounter."  Moreover, the patrolman was responding to a report of a possible drunk driver in a red pickup truck outside a grocery store and found Jones at that location with his head slumped down, asleep behind the wheel with the headlights on and the key in the ignition.  And when

the patrolman knocked on the window to wake Jones, he "looked to be confused, dazed." Based on the totality of these circumstances, we believe the evidence shows that the patrolman had a reasonable, articulable suspicion that Jones had committed an OVI offense and was therefore justified in detaining him by opening the driver's side door. Accordingly, we affirm the trial court's judgment.

I. Facts

{¶2} Jones was charged in a complaint with one count of OVI. He filed a motion to suppress all evidence obtained as a result of the "stop" at issue. At the hearing on the motion, the State presented the testimony of Patrolman Ralph Newell of the Marietta Police Department. Newell testified that on September 19, 2010, he was dispatched to Food For Less around 11:20 p.m. based on a report of a possible drunk driver in a small red pickup truck. Newell spotted the truck near the front door of the store, approached it and saw the key was in the ignition and the headlights were on but that the vehicle was not running. According to Newell, Jones' head was "slumped down" and he was "asleep behind the wheel." After Newell knocked on the window "to see what was going on," Jones woke up. Newell then opened the door to check Jones' condition and smelled alcohol. Newell explained that he opened the door instead of asking Jones to open it because "[h]e just looked to be confused, dazed" as he just woke up.

{¶3} The court denied the motion to suppress, finding that:

> Based on Ptl. Newell's testimony, the Court found that it was 11:21 pm, that Defendant was slumped over the wheel with his headlights on and the key in the ignition, and that Ptl. Newell had been dispatched to that location due to a report of a suspected drunk driver in a red truck. Based on that report, Ptl. Newell had the right to approach the red truck that he found the defendant sitting in. Based on the observations made by

Ptl. Newell when he first approached, and the confused/dazed look on the defendant's face after the officer knocked on his window, Ptl. Newell did not exceed his authority in opening the door to speak to the defendant.

**{¶4}**   Subsequently, a jury found Jones guilty of OVI in violation of R.C.

4511.19(A)(2).  After sentencing, Jones filed this appeal.

## II.  Assignment of Error

**{¶5}**   Jones assigns one error for our review:

THE COURT BELOW ERRED IN DENYING THE DEFENDANT'S
MOTION TO SUPPRESS ON THE GROUNDS THAT THE ARRESTED
OFFICER LACKED REASONABLE ARTICULABLE SUSPICION THAT
THE DEFENDANT HAD COMMITTED A VIOLATION OF LAW.

## III.  Motion to Suppress

### A.  Standard of Review

**{¶6}**   Our review of a trial court's decision on a motion to suppress presents a

mixed question of law and fact.  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665,

850 N.E.2d 1168, at ¶100, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-

5372, 797 N.E.2d 71, at ¶8.  When considering a motion to suppress, the trial court acts

as the trier of fact and is in the best position to resolve factual questions and evaluate

witness credibility.  Id.  Accordingly, we defer to the trial court's findings of fact if they

are supported by competent, credible evidence.  *State v. Landrum* (2000), 137 Ohio

App.3d 718, 722, 739 N.E.2d 1159.  Accepting those facts as true, we must

independently determine whether the trial court reached the correct legal conclusion in

analyzing the facts of the case.  *Roberts* at ¶100, citing *Burnside* at ¶8.

### B.  Did Newell Act Reasonably?

**{¶7}**   In his sole assignment of error, Jones contends that the trial court erred

when it denied his motion to suppress.  Jones' brief is vague about what actions of

Newell he specifically takes issue with.  However, based on the transcript from the motion to suppress hearing, it is apparent that Jones believes that Newell lacked reasonable suspicion to approach his vehicle and open the driver's side door, which allowed Newell to smell alcohol in his vehicle.  At the hearing, Jones acknowledged that if these actions were legally appropriate, Newell would have had reasonable suspicion to conduct an OVI investigation once he smelled alcohol.  The State argues that Newell had reasonable suspicion to detain Jones.  The State does not claim that Newell's actions were justified because he was acting in his role as a community caretaker, i.e. Newell had reasonable suspicion to believe Jones needed assistance.  See generally *City of Geneva v. Fende*, Ashtabula App. No. 2009-A-0023, 2009-Ohio-6380, at ¶¶15-19.

{¶8}    The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches and seizures.  See *State v. Orr*, 91 Ohio St.3d 389, 391, 2001-Ohio-50, 745 N.E.2d 1036.  Because these provisions contain virtually identical language, the Supreme Court of Ohio has interpreted them as affording the same level of protection.  Id.  "Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the State to establish that the warrantless search or seizure was constitutionally permissible."  *State v. Hansard*, Scioto App. No. 07CA3177, 2008-Ohio-3349, at ¶14, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E .2d 507 and *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, at paragraph two of the syllabus.  The State does not dispute the fact that Newell did not have a warrant in this case.

{¶9}   The Supreme Court of the United States recognizes three categories of police-citizen interactions: "(1) consensual encounters, (2) investigative or '*Terry*' stops, and (3) arrests." *State v. Travis*, Scioto App. No. 06CA3098, 2008-Ohio-1042, at ¶9, citing *Florida v. Royer* (1983), 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.E.2d 229 and *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.E.2d 497. "Police may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity." Id. at ¶10, citing *Mendenhall* at 556. An encounter is consensual when an officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to not answer and walk away. *In re Nesser*, Ross App. No. 00CA2551, 2000-Ohio-1949, 2000 WL 33226180, at *3. "More pertinently, the mere approach and questioning of persons seated within parked vehicles does not constitute a seizure * * *," i.e. it is a consensual encounter. *State v. Turley* (Mar. 6, 1997), Lawrence App. No. 96CA20, 1997 WL 111761, at *2, citing 3 LaFave, Search and Seizure (2 Ed.1987) 408-409 and 415-416, Section 9.2(b). Thus, Newell could lawfully approach Jones' parked vehicle and knock on the window to rouse him without any specific justification because such an encounter does not implicate the Fourth Amendment.

{¶10}  However, the constitutional guarantees regarding seizures are implicated if "the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *In re Nesser* at *3, quoting *State v.Taylor* (1995), 106 Ohio App.3d 741, 748, 667 N.E.2d 60. "Once a person's liberty has been restrained, the encounter loses its consensual nature" and becomes either an

investigatory detention/*Terry* stop or a seizure that is the equivalent of an arrest.  See

*Taylor* at 748 -749.

**{¶11}**  The investigatory detention "is more intrusive than a consensual

encounter, but less intrusive than a formal custodial arrest.  The investigatory detention

is limited in duration and purpose and can only last as long as it takes a police officer to

confirm or to dispel his suspicions.  A person is seized under this category when, in

view of all the circumstances surrounding the incident, by means of physical force or

show of authority a reasonable person would have believed that he was not free to

leave or is compelled to respond to questions."  Id. at 748 (internal citation omitted).  "A

seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is

made under real or pretended authority; (3) it is accompanied by an actual or

constructive seizure or detention; and (4) it is so understood by the person arrested."

Id. at 749, citing *State v. Barker* (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324, at

syllabus.

**{¶12}**  Once Newell opened Jones' door and effectively restrained his freedom of

movement, the encounter became an investigatory detention but had not reached the

level of an arrest.  See generally *State v. Brown*, 183 Ohio App.3d 337, 2009-Ohio-

3804, 916 N.E.2d 1138, at ¶9. In *State v. Abernathy*, Scioto App. No. 07CA3160, 2008-

Ohio-2949, at ¶¶22-24 (internal citations and quotation marks omitted), we outlined the

requirements for a constitutionally permissible investigatory detention or stop:

> The investigative stop exception to the Fourth Amendment warrant
> requirement allows a police officer to stop and briefly detain an individual if
> the officer possesses a reasonable suspicion, based upon specific and
> articulable facts, that criminal activity may be afoot.  To justify an
> investigative stop, the officer must be able to articulate specific facts that
> would warrant a person of reasonable caution in the belief that the person

stopped has committed or is committing a crime.

A valid investigative stop must be based upon more than a mere hunch that criminal activity is afoot. Reviewing courts should not, however, demand scientific certainty from law enforcement officers. Rather, a reasonable suspicion determination must be based on commonsense judgments and inferences about human behavior. Thus, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

A court that is determining whether a law enforcement officer possessed reasonable suspicion to stop an individual must examine the totality of the circumstances. The totality of the circumstances approach allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. Thus, when a court reviews an officer's reasonable suspicion determination, a court must give due weight to factual inferences drawn by resident judges and local law enforcement officers.

{¶13} Moreover, an informant's tip may provide an officer with reasonable suspicion. Id. at ¶26. "When officers base reasonable suspicion upon an informant's tip, the Ohio Supreme Court has identified several factors including 'the informant's veracity, reliability and basis of knowledge' that are considered to be 'highly relevant in determining the value of [the informant's] report.'" Id., quoting *Maumee,* supra, at 299. "Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant." Id., quoting *Maumee* at 300. As the Court explained in *Maumee* at 300:

While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore,

will generally require independent police corroboration. *Alabama v. White* [1990], 496 U.S. [325,] 329 * * *. The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates* [1983], 462 U.S. [213,] 233-234 * * *.

{¶14} Although the State contends that an identified citizen informant notified police about the possible drunk driver at Food For Less, the State bases this argument on testimony elicited at Jones' trial – not at the hearing on the motion to suppress. At the hearing, the State presented no evidence about who called in the tip, so we must treat the informant as anonymous. Newell testified that this informant told police about a possible drunk driver in a small red pickup truck at the grocery store. Once Newell arrived at the scene, he was able to corroborate the fact that there was a small red pickup truck at that location. Although Newell did not actually observe Jones operate the vehicle, he saw Jones with his head "slumped down," asleep behind the wheel with the key in the ignition and the headlights on. And when Newell knocked on the window to wake Jones up, he "looked to be confused, dazed." Based on the totality of these circumstances, we believe the evidence shows that the Newell had a reasonable, articulable suspicion that Jones had driven under the influence of alcohol and/or a drug of abuse, parked the vehicle, and passed out behind the wheel. Therefore, Newell was justified in conducting an investigatory detention, and the trial court properly overruled Jones' motion to suppress.

{¶15} Jones implies that Newell lacked a reasonable, articulable suspicion to open his car door because Newell "acknowledged that he had witnessed no violation of law and would not have stopped Defendant had Mr. Jones driven away. Rather, the

officer testified that he would have followed Defendant's vehicle first." (Appellant's Br. 4). Jones appears to construe this testimony to mean Newell did not believe he had any basis to detain Jones. And Jones essentially contends that we should find a lack of reasonable suspicion based on Newell's subjective belief. However, "[r]eviewing the totality of the circumstances to determine whether an officer had reasonable suspicion to justify an investigative stop or detention is an objective, rather than subjective, inquiry." *State v. Newrones*, Portage App. No. 2003-P-0095, 2004-Ohio-3685, at ¶11, citing *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343, 685 N.E.2d 762, at paragraph one of the syllabus. Thus even if we agreed with Jones' assessment of Newell's subjective belief, it would be irrelevant to our totality of the circumstances analysis.

**{¶16}** Accordingly, we overrule Jones' sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.



For the Court


BY: _____
         William H. Harsha, Judge




## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**