[Cite as *State v. Benson*, 2025-Ohio-609.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 23CA3 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| WILLIAM BENSON, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 02/19/2025** |

APPEARANCES:

R. Jessica Manungo, Assistant Ohio Public Defender, Columbus, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Assistant Ross County Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Wilkin, J.

{¶1} This is an appeal from a Ross County Court of Common Pleas judgment of conviction in which the jury found appellant, William Benson, guilty of aggravated possession of drugs, a fifth-degree felony. Benson raises two assignments of error: (1) Benson received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress the evidence, and (2) the trial court plainly erred when it admitted illegally obtained evidence.

{¶2} After reviewing the record, the parties' briefs, and the applicable law, we find that Benson has failed to prove that his trial counsel was ineffective or that the trial court plainly erred in admitting the evidence obtained as a result of Benson's constitutional search and seizure. Therefore, we affirm his conviction.

FACTS AND PROCEDURAL BACKGROUND

{¶3} On August 5, 2022, an indictment was issued against Benson charging him with aggravated possession of drugs in violation of R.C. 2925.11, a fifth-degree felony.  The matter proceeded to a jury trial on December 13, 2022, wherein the State called three witnesses to testify.  Benson did not call any witnesses.  Pertinent to the issues on appeal is Deputy John Shears' testimony.

{¶4} Deputy John Shears testified that he was employed with the Ross County Sheriff's Department.  He is a road patrol deputy.  Road patrol deputies "handle calls for service, conduct traffic stops, [and] investigation of crimes."  He has been in law enforcement for four and a half years.

{¶5} Deputy Shears testified that on January 26, 2022, at approximately 2:00 a.m., he observed a vehicle parked on the side of the 1600 Block of Charleston Pike, located in Ross County, Ohio.  Charleston Pike is "a two-lane county road" "with no sidewalk and no place to pull over."  Deputy Shears indicated "it's unusual for vehicles to be parked on the side" of this roadway.  As Deputy Shears approached the vehicle, he saw Benson sitting in the driver's seat slumped over the center console.  Deputy Shears also observed an open bottle of Budweiser sitting between Benson's legs.  Deputy Shears knocked loudly on the driver's side window twice.  When Benson came to, Deputy Shears asked him to roll down his window and Benson complied.  Benson told Deputy Shears that he had been there since 11:00 p.m.  He pulled over to use his cell phone and fell asleep.  Benson also volunteered that he lived approximately three and a half miles from where they were.

{¶6} Deputy Shears asked Benson how much he had to drink to which Benson responded that he had just opened the bottle between his legs and that was all. Deputy Shears then asked Benson "do you care to step out of the vehicle here with me real quick," and Benson complied. Deputy Shears testified that it was common to ask someone to step outside of the vehicle "to see if someone stumbles out of the vehicle and, you know, I want to get them walking to where I can determine whether or not if they are under the influence of alcohol." When Benson was exiting the vehicle, Deputy Shears saw him attempt to conceal something on his right hip. Then Deputy Shears "saw what appeared to be a holster sticking out of the bottom of [Benson's] jacket." Benson immediately "grabbed [Benson's] right hand because it was on his right hip and lifted his hooded sweatshirt and escorted him back to the front of [his] vehicle." Deputy Shears then removed the firearm from Benson's holster. Deputy Shears testified that Benson had not informed him that he had a firearm.

{¶7} Deputy Shears placed Benson in restraints, read him his Miranda rights, and sat him in the back seat of his cruiser. Deputy Shears then identified Benson and found that he did not have a concealed carry permit. Deputy Shears knew he was going to charge Benson with carrying a concealed weapon without a permit; however, his concern was determining if Benson was intoxicated while in possession of a firearm and he wanted to "brush up" on the elements of that offense. Next, Deputy Shears conducted an inventory of Benson's vehicle. Deputy Shears testified that "[i]inventorying a vehicle that's being towed is our policy." When asked why he was towing the vehicle, Deputy Shears stated that

the vehicle was not registered to Benson and that Benson was going to jail for carrying a concealed weapon without a permit, which is a felony.

{¶8} Prior to conducting the inventory, Deputy Shears took pictures of both the inside and outside of the vehicle Benson was driving. One of the photos depicted a camouflage bag located in the front passenger seat. The bag was "in the direct area of [Benson] when he was seated in the vehicle." Deputy Shears looked in the camouflage bag and he found "a medication bottle with [Benson's] name on it as well as a starburst gum container." "Inside the starburst container, there was a clear plastic baggie with a white powdery substance along with a cut straw with a white substance as well." The deputy testified that based on his experience and training the substance in the baggie was drugs. Deputy Shears then secured the evidence of contraband along with a Bureau of Criminal Investigation ("BCI") submission form. The substance found by the deputy was tested by BCI and determined to be .14 grams of methamphetamine.

{¶9} The jury found Benson guilty of aggravated possession of drugs in violation of R.C. 2925.11, a fifth-degree felony. Benson was sentenced to two years of community control and ordered to pay the court costs. It is from this judgment of conviction entry that Benson now appeals.

FIRST ASSIGNMENT OF ERROR

WILLIAM BENSON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS THE EVIDENCE POLICE OBTAINED FOLLOWING AN UNCONSTITUTIONAL SEIZURE.

{¶10} In Benson's first assignment of error, he argues that his trial counsel was ineffective for failing to file a motion to suppress the evidence obtained by

the deputy. Benson agrees that the initial encounter between Deputy Shears and himself began as consensual; however, when Deputy Shears ordered Benson out of his "legally parked car without pointing to specific and articulated facts that gave rise to a reasonable suspicion that crime had been or was being committed" their encounter turned into an unconstitutional seizure. Benson argues that the "deputy had nothing more than an articulated hunch, that because Mr. Benson had an open beer bottle, he may be intoxicated." Because of this "hunch" the deputy seized Benson by removing him from his vehicle and engaged in an unlawful search.

{¶11} Benson acknowledges that he was in violation of Ohio's open container law; however, he argues that this is a minor misdemeanor offense and because none of the exceptions listed in R.C. 2935.26 apply to him, the most Deputy Shears could have done was issue a citation. Thus, there was no articulable reason to order Benson out of the vehicle.

{¶12} Benson further argues that *Pennsylvania v. Mimms,* 434 U.S. 106 (1977), does not apply. In *Mimms,* the United States Supreme Court determined that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* at 111, fn. 6. Benson says the key language here is "lawfully detained." Benson contends that he was legally parked on the side of the road when Deputy Shears approached him, and, although he did have an open container, this was not an

arrestable offense, and *Mimms* only applies to traffic stops. Therefore, the deputy had no articulable reason to order Benson out of his vehicle.

{¶13} Benson maintains that had a motion to suppress been filed, then "there is a reasonable probability that the gun, which led to Mr. Benson's arrest and drugs found in his bag would have been suppressed." He further asserts that there is no strategic reason for his counsel not to have filed a suppression motion. As a result of Benson's trial counsel's deficient performance in not filing a motion to suppress, he was prejudiced and, therefore, Benson requests this court to vacate his conviction and remand for a new trial.

{¶14} The State responds by first agreeing with Benson that the deputy's initial approach to Benson was a consensual encounter. The State, however, argues that merely asking Benson to step out of his vehicle was not an arrest, and, although it may perhaps be a seizure, Deputy Shears has several reasonable and articulable factors that justified his request for Benson to step outside of his vehicle. Those factors included Benson sitting in the driver's seat of a running vehicle on the side of a two-lane county road with no sidewalk or place to pull over at 2:00 a.m., Benson slumped over the center console with an open container of Budweiser between his legs, Benson admitting to drinking alcohol, and Benson admitting he had been pulled over for approximately three hours and was only three to four miles from home. Therefore, any filing of a motion to suppress by Benson's trial counsel would have been a futile act and the failure to do a futile act is not a basis for an ineffective assistance of counsel claim.

{¶15} Benson filed a reply brief arguing that there were no specific articulable facts indicating that Benson was impaired or intoxicated that would have justified Deputy Shears ordering him out of his vehicle to determine if he was intoxicated. In fact, Benson was legally pulled over on the side of the roadway. When awakened, Benson greeted the deputy and explained why he stopped. Benson was responsive to all the questions Deputy Shears asked and he did not exhibit any slurred speech. Benson "admitted that he had consumed alcohol from a single bottle, which was visibly not empty[;]" however, "nothing in Benson's demeanor or responses suggested that he was lying or was wrong about how much he consumed." Benson argues "an officer must have specific and articulable facts that the driver is intoxicated or impaired before intruding upon the individual's freedom of movement." In the matter at hand, the deputy ordered Benson out of his vehicle without specific and articulable facts that Benson was intoxicated. Thus, the factors presented did not give Deputy Shears reasonable suspicion that Benson was intoxicated and, therefore, he did not have the right to engage in an unconstitutional seizure.

Law and analysis

{¶16} To demonstrate ineffective assistance of counsel, Benson "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 2011-Ohio-3641, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *State v. Bradley*, 42 Ohio St.3d 136

(1988), paragraph two of the syllabus.  Failure to demonstrate either prong of this test "is fatal to the claim."  *State v. Jones,* 2008-Ohio-968, ¶ 14 (4th Dist.), citing *Strickland*, 466 U.S. 668.

{¶17} "In Ohio a properly licensed attorney is presumed competent." *State v. Ruble*, 2017-Ohio-7259, ¶ 47 (4th Dist.), citing *State v. Gondor*, 2006-Ohio-6679, ¶ 62.  Therefore, when reviewing an ineffective-assistance-of-counsel claim, "we must indulge in 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  *Id.*, quoting *Strickland* at 697.

{¶18} To establish ineffective assistance of counsel for failing to seek suppression of the contraband seized from Benson's vehicle, he "must prove that there was a basis to suppress[.]"  *State v. Whitehead*, 2022-Ohio-479, ¶ 40 (4th Dist.), quoting *State v. Brown*, 2007-Ohio-4837, ¶ 65, citing *State v. Adams*, 2004-Ohio-5845, ¶ 35.  " ' "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." ' " *Id.*, quoting *State v. Drummond*, 2006-Ohio-5084, ¶ 208, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95 (8th Dist. 1980).

{¶19} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures."  *State v. Emerson*, 2012-Ohio-5047, ¶ 15.  Additionally, this

constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion of evidence obtained from the unreasonable search and seizure at trial. *Id.*

**{¶20}** "The Supreme Court of the United States recognizes three types of police-citizen interactions: (1) a consensual encounter, which requires no objective suspicion; (2) a brief, investigatory stop or detention, which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) an arrest, which must be supported by probable cause." *State v. Strong*, 2019-Ohio-2888, ¶ 15 (4th Dist.), citing *United States v. Williams*, 525 Fed.Appx. 330, 332 (6th Cir. 2013); *Florida v. Royer*, 460 U.S. 491, 501–507 (1983); *United States v. Mendenhall*, 446 U.S. 544, 553, (1980).

**{¶21}** An encounter is considered consensual and not subject to Fourth Amendment protection when a police officer merely approaches a person in a public place, engages the person in conversation, requests information, and the person is free to decline to answer and walk away. *State v. Blankenship*, 2014-Ohio-3600, ¶ 11 (4th Dist.), citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Thus, "no Fourth Amendment rights are invoked with a consensual encounter because there is no seizure." *Strong* at ¶ 16, citing *Blankenship* at ¶ 11.

**{¶22}** And "[t]he 'investigative stop' exception to the Fourth Amendment warrant requirement allows a police officer to temporarily detain a person for the limited purpose of investigating suspected criminal behavior." *Strong*, 2019-Ohio-2888, ¶ 18 (4th Dist.), citing *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991). However, "[w]hile an investigative stop constitutes a seizure, it does not violate

the Fourth Amendment as long as the officer has a reasonable suspicion, based

upon specific and articulable facts, that criminal activity 'may be afoot' (i.e., that a

person has committed or is about to commit a crime.)" *Id.*, citing *State v.*

*Abernathy*, 2008-Ohio-2949, ¶ 22-24 (4th Dist.); *Terry v. Ohio*, 392. U.S. 1, 30

(1968).

{¶23} " 'The propriety of an investigative stop by a police officer must be

viewed in light of the totality of the surrounding circumstances.' " *Eatmon*, 2013-

Ohio-4812, ¶ 13; quoting *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph

one of the syllabus.  The totality of the circumstances approach "allows officers to

draw on their own experience and specialized training to make inferences from

and deductions about the cumulative information available to them that 'might

well elude an untrained person.' " *United States v. Arvizu,* 534 U.S 266, 273

(2002), *overruled in part on other grounds* by *Davis v. Washington*, 547 U.S. 813

(2006); quoting *U.S. v. Cortez*, 449 U.S. 411, 418 (1981).

{¶24} And,

> a seizure occurs when, in view of all of the circumstances
> surrounding the incident, the police officer has either by physical
> force or a show of authority restrained the person's liberty so that a
> reasonable person would not feel free to decline the officer's
> requests and walk away or otherwise terminate the encounter. *State*
> *v. Travis*, 4th Dist. Scioto No. 06CA3098, 2008-Ohio-1042, ¶10;
> citing *State v. Williams*, 51 Ohio St.3d 58, 554 N.E.2d 108 (1990).

*Strong* at ¶ 17.

"While no 'litmus-paper test [exists] for distinguishing a consensual encounter

from a seizure,' * * * certain factors may indicate that a seizure has occurred." *Id.*

citing *Blankenship* at ¶13;  *Royer* at 506.

**{¶25}** In determining whether a seizure has occurred, some of the factors to consider include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980); *See also Blankenship*, 2014-Ohio-3600, ¶ 13 (4th Dist.) (listing additional factors to consider).

### A. Consensual Encounter

**{¶26}** We begin our analysis with the fact that both parties concede and we agree that Deputy Shears' initial approach upon Benson was a consensual encounter and not subject to the Fourth Amendment protection. *See State v. Jones*, 2012-Ohio-1523, ¶ 9 (4th Dist.) ("The mere approach and questioning of persons seated within parked vehicles does not constitute a seizure * * *, i.e. it is a consensual encounter.")

**{¶27}** During this consensual encounter, Deputy Shears initially observed Benson's running vehicle parked on the side of a public, two-lane county road at 2:00 a.m., which is an unusual place to park according to the deputy. Upon approaching the vehicle, Deputy Shears further observed Benson sitting in the driver's seat, slumped over the center console with an open container of alcohol in-between his legs. Deputy Shears additionally had to knock loudly two times on Benson's window to arouse him. Because Deputy Shears was able to make these observations by looking into Benson's vehicle, which was parked in a public place, no unreasonable search or seizure occurred, i.e., no Fourth

Amendment interest was involved. *See Id., citing State v. Bradford*, 2010-Ohio-1784, ¶ 35 (4th Dist.) ("The open view doctrine applies where an officer views an object that is not subject to a reasonable expectation of privacy. No search occurs because the owner of the object has voluntarily exposed it to public view"); Katz, Ohio Arrest, Search and Seizure*,* Section 14:5, 349 (2013) (distinguishing "open view" from "plain view" and noting that a "police officer who looks into the car window sees the contents in open view").

### B. Investigatory Stop

**{¶28}** The issue between the parties arises when Deputy Shears asked Benson if he cared to step outside of the vehicle. Benson acknowledges that he was in violation of the open-container statute; however, he claims that because his open-container violation was a non-arrestable offense, there was no justifiable reason to order him out of the vehicle. We disagree.

**{¶29}** We first want to observe that in addition to the open-container violation, Deputy Shears had reasonable articulable suspicion that Benson was impaired. Benson was parked on a county road, in a running vehicle at 2:00 a.m. Benson was in the driver's seat, slumped over the center console. Deputy Shears knocked loudly two times on Benson's window to awaken him. Benson admitted to being parked for approximately three hours and he was only three to four miles from his home. Benson further admitted that he had been drinking. These specific and articulable facts, taken together, clearly warrant Deputy Shears' suspicion that Benson was impaired. Accordingly, based on these facts,

we find that Deputy Shears' request that Benson step outside of his vehicle was warranted and did not violate his Fourth Amendment protections.

**{¶30}** Moreover, even if the only offense Deputy Shears was investigating was the open container offense, the request for Benson to step out of the vehicle would still be reasonable and not a Fourth Amendment violation. This is because the deputy could lawfully stop and detain Benson for criminal activity, albeit a minor misdemeanor.[1] *See State v. Allen,* 2021-Ohio 3047, ¶ 38 (2d Dist.) ("The officers' observation of the jaywalking provided reasonable and articulable suspicion that Allen had engaged in criminal activity, albeit a minor misdemeanor."). Moreover, the officer is required to investigate any criminal activity, including the open container and determine if there were other open containers in the vehicle. *See City of Mentor v. Kinkopf*, 2000 WL 757736, *4 (11th Dist., June 9, 2000) ("At that point, he asked the passengers to exit the auto and he had probable cause to believe that there was evidence of a crime, *i.e.* more open containers, in the car to conduct a warrantless search. It was at that time that the pipe, marijuana cigarette, and another open container of beer were found. Therefore, the search and seizure of the illegal drugs were proper.")

**{¶31}** Therefore, we find that Deputy Shears' request for Benson to step outside his vehicle was constitutionally permissible. Because Benson cannot establish there was a basis to suppress the evidence in question, we reject his claim that defense counsel was deficient for failing to file a motion to suppress.

---

[1] Benson's argument focuses on the fact that an open container offense is a minor misdemeanor, yet, he maintains that if the stop was a traffic violation, the deputy's request for Benson to exit would have been lawful. Many of the traffic violations, however, are minor misdemeanors.

Accordingly, we overrule Benson's first assignment of error.

SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT PLAINLY ERRED WHEN IT ADMITTED ILLEGALLY OBTAINED EVIDENCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶32} In Benson's second assignment of error, he claims the trial court committed plain error by admitting the illegally obtained evidence as a result of the unconstitutional search. Benson argues that "his substantial rights were affected not only when Deputy Shears illegally seized him, but when the evidence was admitted to trial and directly resulted in his conviction and sentence." Therefore, Benson requests this court to find that the trial court plainly erred in admitting the evidence of the unconstitutional seizure.

{¶33} The State responded by indicating that the seizure was supported by reasonable and articulable facts in the record supporting the deputy's actions in this case. Therefore, the court did not plainly error in admitting the evidence.

LAW AND ANALYSIS

{¶34} Crim.R. 12(C) requires a defendant to file a motion to suppress illegally-obtained evidence before trial. And "[i]f a defendant does not file a motion to suppress evidence before trial, the defendant waives all but plain error on appeal." *State v. Steers*, 2013-Ohio-3266, ¶ 18 (4th Dist.). "Generally, we recognize plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.* at ¶ 19, quoting *State v. Landrum,* 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. And for plain error to apply, "the trial

court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right." *Id.*, citing *State v. Barnes,* 94 Ohio St.3d 21, 27 (2002).

**{¶35}** We determined in Benson's first assignment of error that there were reasonable articulable facts in the record that supported the deputy's request for Benson to step outside his vehicle.  Accordingly, we held that Benson cannot demonstrate his counsel was ineffective for failing to file a motion to suppress, because it would have been a futile act.  As there are no grounds to file the motion to suppress the evidence, we cannot find that the trial court made an obvious error in admitting the evidence obtained.  Therefore, we find no obvious defects in the trial court proceedings that violated Benson's substantial rights. Accordingly, we find Benson's second assignment of error, arguing plain error, is not well taken and, thus, overruled.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**